42 137
71 451

CITY OF NEW BRITAIN *vs.* JAMES B. SARGENT AND ANOTHER.

A city, under a resolve of the legislature, diverted for public purposes a stream of water, the resolve providing for the assessment of damages by a committee, whose award should be final. *S* owned a factory building situated below a dam on the stream, with the right to use the water for manufacturing purposes; but the building had ceased to be used as a factory and had been con-

verted into a tenement house.  He also had a right to flow certain lands above the dam.  Held that there was no principle of law that required the commissioners to assess the damages to the property below the dam at what it might be worth if used for manufacturing purposes, and that above the dam as equivalent to the gain to the owners of the land in being relieved of the flowage, but that the question was wholly one of fact, and that the judgment of the committee could not be revised by the court.

ASSESSMENT of damages to the respondents for the taking of a stream of water by the city of New Britain for public purposes, and a remonstrance by the respondents against the acceptance of the report of the assessing committee; before Judge *Pardee* of the Superior Court.   Facts found on the remonstrance, remonstrance overruled and report accepted, and motion in error by respondents.   The case is sufficiently stated in the opinion.

*Perkins*, for the plaintiffs in error.

*Hungerford*, for the defendant in error.

FOSTER, J.   The remonstrants in this case rest their claim to damages on two grounds:—

1.   The loss of the right to flow land of an up-stream proprietor; and,

2.   The loss of the use of the water as it was accustomed to run.

These damages grow out of the action of the city of New Britain in diverting and appropriating a certain stream of water, flowing into and through said city.   The action of the city in the premises was by virtue of an amendment to the city charter, passed by the General Assembly, May session, 1872, authorizing the diversion of said stream, and providing for the assessment of the damages and benefits which might result therefrom.

The remonstrants insist that the amount of damages to be assessed to them, on their first ground of claim, is determined, by a rule of law, to be the increased value given to the land of the up-stream owner by relieving it of the pond of water which the remonstrants had the right to maintain upon it.

City of New Britain *v.* Sargent.

They also claim that the law furnishes the rule for determining the damages on their second ground of claim—the loss of the use of the water; that this damage does not depend on the value of the water for the use to which it was then applied, but is determined by ascertaining its value for any use to which it possibly could be applied.

We think there is but one question in the case, and that is, what damages have the remonstrants sustained by the loss of this stream of water? It is manifestly a question of fact, not of law, though it may involve legal considerations.

From the finding of facts it appears that the establishment, in connection with which the remonstrants formerly used said water, had been, for many years, given up for manufacturing purposes, and had been converted into tenements, and was used for that purpose at the time of the hearing. The committee appointed to assess damages took into consideration the value of said water to the remonstrants, as then used, and also its value for any and all prospective purposes to which it might be applied. They awarded a greater sum in damages than the value of the water as used at the time of the hearing, but a less sum than if the remonstrants had, by a large outlay of money, been in a condition to use the water in connection with a mill or manufactory, and had been actually using the same in that manner.

We see no just grounds of complaint against this decision. It violated no legal principle applicable to the case. There is no stubborn rule of law which required the committee to ascertain the highest value which this water might have, for every possible or conceivable purpose to which it could be applied, and to fix on that as the amount of damages. Such a rule would be no more reasonable, to say the least, than to ascertain the sum which would compensate for the loss of the water, as it was then used, and adopt that. The committee took neither of these courses, but seemed to consider the question as one addressed to their sound discretion and judgment, as a question of fact, (in which we think they were quite right,) and as such they decided it. To revise that decision, involving only a matter of fact, is beyond our

powers, even if the decision seemed, as it does not, to require revision.

This really makes an end of the case, but the remonstrants insist on additional damages for the loss of an easement, the right to flow the land of an up-stream proprietor.   Taken in connection with, and as making up a part of the value of the stream for use by the remonstrants, it is obvious that this right of ponding might greatly increase that value.   A reservoir would thus be created, making the stream available through the year, when otherwise it might be nearly worthless in the dry season.   The remonstrants, however, ask us to consider it as a right independent of all right to the use of the water; a mere naked right, to keep water standing on a neighbor's land, without claiming any accruing advantage, present or prospective, from the exercise of the right.

A right of such a character can be enforced against the owner of the soil, apparently, but for one of two purposes— to extort money from the owner, or to subject the land to a wanton injury.   Surely courts of justice cannot be expected to regard such claims with much favor.

We are relieved from all difficulty on this subject by the facts found.   It appears that there were so many parties, other than the remonstrants, claiming to be interested, and having rights of drainage and other rights, in said stream, below the point of diversion, that the destruction of the easement of the remonstrants, over the lands in question, would not practically free said lands from the incumbrance of the water.   And it is further found, that owing to the interests and rights of other parties in said stream, the easement of the remonstrants, as a means of obtaining money from the owners of the land for its removal, or for any purpose, apart from the use of the water, was of no great value.   An additional sum in damages was assessed to the remonstrants on this account, but how much does not appear.

If, therefore, the remonstrants are right in their claim, that, as matter of law, the increased value of the land, discharged of the easement, belongs to the owner of the easement, these remonstrants are entitled to a portion, only, of that increased

value. A portion has been awarded to them, and we must presume that to be the proper sum, though it may have been too little, and it may have been too much. The question was addressed to the sound judgment and discretion of the committee. They have acted, and made their report, which has been accepted. That, by the express provisions of the resolve of 1872, is final.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred, except PHELPS, J., who did not sit in the case.*

—————————————————
* Judge PHELPS was absent during the rest of the term by reason of illness.