DANIEL N. STANTON AND ANOTHER *vs.* THE NEW YORK
& EASTERN RAILWAY COMPANY AND OTHERS.

New Haven and Fairfield Cos., April T., 1890. ANDREWS, C. J., CARPEN-
TER, LOOMIS, SEYMOUR and TORRANCE, Js.

A corporation has power when fully organized to ratify a contract made by
its promoters before its organization, when it is one within the pur-
poses for which the corporation was organized and appears to be a rea-
sonable means for the carrying out of those purposes.

The ratification makes the contract in all respects what it would have been
if the requisite power had existed when it was entered into.

The promoters of a corporation, previous to its organization, made a con-
tract with the plaintiff for the purchase by him of a right of way for a
contemplated railroad, and after the organization the corporation rati-
fied the contract. After the plaintiff had secured the right of way for
several miles the directors of the corporation, in consequence of their
failure to get authority to build a necessary bridge across a navigable
river, abandoned the enterprise and allowed the corporate powers to
expire. The plaintiff was to have been paid in stock of the company
to be issued by the directors. In abandoning the enterprise the direc-
tors decided to issue no more stock and called in what had been issued.
In a suit by the plaintiff to recover for his services under the contract,
it was held— .

1. That by the ratification of the contract the corporation became bound
by it and that the plaintiff was entitled to recover for services under
it rendered prior to the incorporation.

2. That it was no defence that after failing to get authority to build the
bridge it was impracticable to obtain subscriptions to the stock or to
raise money to build the road.

3. That it did not affect the case that the plaintiff knew that the success of
the enterprise depended upon getting authority to build the bridge.

4. That the contract being in writing, and specially exempting the plaintiff,
as it did, from all duty in the matter of bridges over navigable waters,
no parol agreement or understanding inconsistent with it could be
shown.

In all cases where a plaintiff has been deprived by the act of the defendant
of the benefit of a contract with him, he is entitled to recover what he
has lost by the defendant's acts. He has been deprived of his contract
and should have in lieu thereof its value.

Nominal damages mean no damages at all. They exist only in name and
not in amount.

[Argued April 24th—decided July 10th, 1890.]

APPEAL by Henry Hungerford, one of the respondents in

the above entitled suit, and a creditor of the defendant corporation, from a judgment of the Superior Court in Fairfield County (*Thayer, J.,*) overruling his remonstrance against the acceptance of the adverse report of a committee upon his claim, and accepting the report. The case is fully stated in the opinion.

*S. Tweedy* and *J. S. Seymour*, for the appellant.

1. A corporation can ratify a contract made by its promoters before its existence. *Spiller* v. *Paris Skating Rink Co.*, L. R., 7 Ch. Div., 368. Ratification of a contract is ratification of the work done under it. *Whitney* v. *Wyman*, 101 U. S. R., 392; *Touche* v. *Metrop. Warehousing Co.*, L. R., 6 Ch. App., 671. The finding is explicit that full performance of the contract was prevented by the company. Non-performance by one party is treated as an agreement that the other may recover for what he has done. *Hawley* v. *Keeler*, 53 N. York, 114; *Weeks* v. *Little*, 89 id., 566; *Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 id., 205. No offer is necessary where failure to complete is caused by the other party. As where completion was prevented by an assignment. *Woolner* v. *Hill*, 93 N. York, 576, 581 ; *Warren* v. *Powers*, 5 Conn., 381, 383. When full performance is prevented by the defendant the plaintiff may recover. *Champion* v. *Hartshorne,* 9 Conn., 568 ; *Smith* v. *Lewis*, 24 id., 624, 635, 640 ; *Connelly* v. *Devoe*, 37 id., 570, 576 ; *Upson* v. *Holmes*, 51 id., 500 ; *South Fork Canal Co.* v. *Gordon*, 6 Wall., 561.

2. The fact that the company abandoned the enterprise in consequence of its failure to get the bridge, has nothing to do with its liability under this contract. *Seipel* v. *Internat. Life Ins. Co.*, 84 Penn. St., 47. That the company was not in a condition to carry out its contract at the time it was ratified, and that both parties knew it, and knew that the company's ability to carry it out depended upon its ability to get a legislative grant, may be a good reason for abandoning the enterprise, and may have forced the company to break its contract with Mr. Hungerford, but it furnishes no

reason why it should not pay the damages for such breach. *Touche* v. *Metrop. Warehousing Co.*, L. R., 6 Ch. App., 671.

3. He is entitled to more than nominal damages if he had done nothing toward performance except to be ready and willing to perform, and had been prevented from performing by the company. The fact that the corporation was not in a condition to carry out its contract at the time it was ratified, furnishes no reason for not carrying out the contract. "Impossibility may consist either in the nature of the action itself, *or in the particular circumstances of the promisor*. It is only the first or objective kind of impossibility that is recognized as such in law; the second, or subjective kind, cannot be relied on by the promisor for any purpose, and does not release him from the ordinary consequences of a willful non-performance of his contract." Pollock on Contracts, 356.

4. For performing this contract the company "agrees to give the party of the second part, five hundred thousand dollars of the capital stock of said railway company, fully paid up." The company cannot say we agreed to pay in stock, but we can let our corporate existence expire, and so defeat your right to anything, by saying after a lapse that the right to stock in a defunct organization is but the right to a thing of no value. An agreement to pay in stock, was an agreement not to let the corporation die until the stock was issued. *McIntyre* v. *Belcher*, 14 Com. Bench, N. S., 654; *Telegraph Despatch Co.* v. *McLean*, L. R., 8 Ch. App., 658; *Stirling* v. *Maitland*, 5 Best & Smith, 840; *Rhodes* v. *Forwood*, L. R., 1 App. Cas., 256. This agreement is different from one to pay in the stock of another company which becomes worthless, for it is the act of the company itself which makes its stock worthless. A breach of an agreement to pay in stock of the company which contracts, entitles the other contracting party to damages on one of the three following rules :—(1.) A sum equal to the par value of the stock.—(2.) The profits of the contract in money, if carried out on both sides.—(3.) Or for the reasonable value of his services and for all his disbursements and loss of time,

and interest on such sums. Redf. on Railways, § 121; *Moore* v. *Hudson River R. R. Co.*, 12 Barb., 156; *Hart* v. *Lauman*, 29 id., 410, 418; *Barker* v. *Troy & Rutland R. R. Co.*, 27 Verm., 766, 779.

*J. B. Hurlbutt*, for the appellees.

1. A corporation must have a full and complete organization and exist as an entity before it can enter into any kind of contract or transact any business. The incorporators bringing it into being have no power to bind it by contract. *Rockford &c. R. R. Co.* v. *Sage*, 65 Ill., 328; *Western Screw Co.* v. *Cousley*, 72 id., 531; *Gent* v. *Manf. & Merchants' Ins. Co.*, 107 id., 652; *Munson* v. *Syracuse &c. R. R. Co.*, 103 N. York, 58; *Penn Match Co.* v. *Hapgood*, 141 Mass., 145; *N. York & N. Hav. R. R. Co.* v. *Ketchum*, 27 Conn., 170.

2. The president of a corporation has no greater powers, by virtue of his office merely, than any other director of the company, except that he is presiding officer at the meetings of the board, and in the absence of anything in the act of incorporation bestowing special power upon the president he has from his mere official station no more control over the corporate property and funds than any other director. The affairs of corporate bodies are within the exclusive control of their board of directors. 1 Morawetz on Priv. Corp., 537; 1 Wood's Railway Law, § 161; *Hart* v. *Stone*, 30 Conn., 96; *Perry* v. *Simpson Waterproof Mfg. Co.*, 37 id., 534; *Bliss* v. *Kaweah Canal Co.*, 65 Cal., 502; *Walworth Co. Bank* v. *Farmers' Loan Co.*, 14 Wis., 351; *Farmers' Bank* v. *McKee*, 2 Penn. St., 318; *Custar* v. *Titusville Gas Co.*, 63 id., 381.

3. Corporations are bound only by such acts and contracts of their agents as are done and made within the scope of their authority, and whoever contracts with a corporation through its agent must inquire into his authority, and, to claim under the contract so made with the corporation, must show it to be within the powers of the officer alleged to have made it. *Alexander* v. *Cauldwell*, 83 N. York, 480; *Chicago & N. West. R. R. Co.* v. *James*, 22 Wis., 187; *Far-*

*mers' Bank* v. *McKee*, 2 Penn. St., 318; *Custar* v. *Titusville Gas Co.*, 63 id., 381; *Huntington &c. R. R. Co.* v. *Decker*, 82 id., 119; *Blen* v. *Bear River Mining Co.*, 20 Cal., 602; *Harwood's Exrs.* v. *Humes*, 9 Ala. N. S., 659; *Keeler* v. *Salisbury*, 33 N. York, 648.

4. It was proper to show by parol evidence that the contract when ratified was to take effect, or rather to go into operation and be operative as a contract, upon the happening of a certain event, to wit, the granting by the legislature of permission to bridge the Housatonic river. *Schindler* v. *Muhlheiser*, 45 Conn., 153; *McFarland* v. *Sikes*, 54 id., 250; *Thomas* v. *Loose*, 114 Penn. St., 35; *Singer Mfg. Co.* v. *Forsyth*, 108 Ind., 334; Addison on Contracts, 8th ed., 205.

5. It was impossible for the company to continue its existence without an act empowering them to bridge the Housatonic river, which was known to both parties, and the contract must be said to be contingent upon that grant, as though it was incorporated in it in express terms, otherwise it would be in effect an absolute contract on the part of the company to procure certain legislation, which is against public policy. *Bryan* v. *Reynolds*, 5 Wis., 209; *Mills* v. *Mills*, 40 N. York, 543; *Fuller* v. *Dame*, 18 Pick., 472; *Frost* v. *Inhab. of Belmont*, 6 Allen, 159; *Marshall* v. *Balt. & Ohio R. R. Co.*, 16 How., 314; *Snow* v. *Ind., B. & W. R. R. Co.*, 109 Ind., 422.

6. A contract, the performance of which depends on the personal capacity of parties, is discharged by their death; in this case by the dissolution of the corporation by law. 3 Am. & Eng. Ency. of Law, 902, par. 80; *Spalding* v. *Rosa*, 71 N. York, 40; *People* v. *Globe Mut. Life Ins. Co.*, 91 id., 174.

7. The measure of damage for breach of covenant to deliver a particular article or thing, is the value of the thing at the time it was to be delivered. Sedgwick on Damages, 6th ed., 290; *Brooks* v. *Hubbard*, 3 Conn., 61; *Phelps* v. *Riley*, id., 266; *Robinson* v. *Noble*, 8 Pet., 181; *Thorington* v. *Smith*, 8 Wall., 1; *Williams* v. *Jones*, 12 Ind., 461; *Smith* v. *Dunlap*, 12 Ill., 184; *Hixon* v. *Hixon*, 7 Humph., 33;

*Green* v. *Sizer*, 40 Miss., 530; *Herbert* v. *Easton*, 43 Ala., 547.

ANDREWS, C. J. The New York & Eastern Railway Company was a railroad corporation organized under the general railroad law of this state for the purpose of building and operating a railroad from the western line of the state in the town of Greenwich to the town of New Haven, a distance of forty-six miles, and included a bridge across the Housatonic river.

At the March term, 1875, of the Superior Court in Fairfield County, upon the application of Daniel N. Stanton and others, Levi Warner, Esq., was duly appointed receiver of all the property and assets of this corporation. Mr. Warner accepted the trust and gave bond as required by the decree of the court. At the same term of the court it was ordered that all persons having claims against the corporation should present them to the receiver within ninety days after the publication of the order. Among others Henry Hungerford of Norwalk presented to the receiver in due time a claim against the corporation amounting to two hundred thousand dollars. At a later term of the court such proceedings were had that Julius B. Curtis, Esq., was appointed a committee of the court to examine and adjust all the claims so presented to the receiver and not allowed by him, and to make report to the court of his doings in the premises. Mr. Hungerford appeared before the committee and offered testimony in support of his claim. Various proceedings were had in court and before the committee from time to time and the committee returned his completed report to the court in June, 1889. Thereupon Mr. Hungerford came into court and remonstrated against its acceptance. The court overruled the remonstrance, accepted the report, and rendered judgment pursuant thereto. Mr. Hungerford now brings the case to this court by appeal. For a clear understanding of the questions raised by the appeal a somewhat more extended statement is required.

On the 12th day of September, 1873, Henry Hungerford

entered into a contract with Samuel E. Olmstead, William C. Street, William T. Minor and Henry R. Parrott, as follows :—

" Whereas the New York & Eastern Railway Company are desirous of procuring lands for the right of way, for depots, side tracks, gravel pits, and other necessary purposes for their railroad, as called for by the terms of the contract between said railway company and D. N. Stanton and A. P. Balch, and within the limits herein provided—the assent of the said Stanton and Balch in writing having been obtained thereto—from the line of the state of New York to the western line of the city of New Haven and from Stratford to Derby :

" Now therefore, for that purpose, the following memorandum of agreement is this day entered into, by and between Samuel E. Olmstead, William C. Street, William T. Minor and Henry R. Parrott, a committee of the directors of the said railway company duly authorized thereto, the party of the first part, and Henry Hungerford of Norwalk, Connecticut, party of the second part.

" The party of the first part, for all the lands necessary for the above purposes, on the line of their said railroad between the western line of the state of Connecticut in the town of Greenwich and the western line of the city of New Haven, and for all expenses for procuring the same except engineering, which shall be paid by the party of the first part, agrees to give the party of the second part five hundred thousand dollars of the capital stock of the said railway company, fully paid up.

" The said party of the second part will at once, as soon as the engineer has located any part of the line of said railroad, proceed to purchase and procure all such necessary lands on said line at his own charge and expense, and within a reasonable time, and as fast as required by said company, will cause such lands to be conveyed to said railway company, or to be taken under the statute laws of the state, that said company may enter thereon and construct their road.

" The engineer shall lay out such additional lines as may be indicated and required by said party of the second part, subject to the approval of the said company, and of the said Stanton & Balch, to enable him to make the most advantageous terms in purchasing said lands for the building of the said road on the most feasible and direct route, as provided by said contract.

" It is mutually agreed and understood, that the party of the second part shall commence at once to procure said lands on such portions of said route as may be required by the party of the first part, and located by said engineer, and as soon as and when he shall cause to be conveyed to said company, or shall procure under the statute the said lands or any portion thereof, then the party of the first part shall pay to the party of the second part or assigns, according to said engineer's estimate per mile for the property conveyed, compared with his gross estimate, in relative proportion to the sum of five hundred thousand dollars ; and when all of said lands are so conveyed and procured, then the remaining portion, if any, of said five hundred thousand dollars capital stock, fully paid up, shall be paid to the party of the second part or assigns. If said five hundred thousand dollars of capital stock shall be insufficient to purchase and procure said lands, then any additional amount to be used for such purpose shall be a matter of further agreement.

" Nothing in this agreement shall be so construed as to hold the said party of the second part liable in any way for procuring charters for drawbridges over navigable waters.

" It is further mutually agreed between the parties hereto that if any portion of the said right of way between the aforesaid boundaries shall not be taken by said company, then so much of said five hundred thousand dollars as shall be a fair relative proportion of the estimated cost of said right of way, depot grounds, etc., not taken, shall be withheld by the party of the first part in the final settlement between the parties hereto ; and the party of the second part shall have no claim of any kind against said company for time or expenses in so purchasing or procuring said right

of way, and that no part of said five hundred thousand dollars of stock or its proceeds shall be used to pay for such time or expenses, except any balance that may be left after purchasing and procuring said lands.

"In case any disagreement should arise between said parties hereto in regard to any matter provided for, or pertaining to this memorandum of agreement, such disagreement or difference shall be submitted to the arbitration of three disinterested persons, either agreed on by the parties or one appointed by each party; and the decision of such arbitrators shall be final and conclusive on the parties to this agreement.

"In witness whereof the parties hereto by their own proper hands and seals have signed this memorandum agreement, this twelfth day of September, one thousand eight hundred and seventy-three. S. E. Olmstead, (L. S.); Wm. C. Street, (L. S.); H. R. Parrott, (L. S.); Wm. T. Minor, (L. S.); Henry Hungerford, (L. S.)"

At that time there was no legally incorporated New York & Eastern Railway Company. There was a voluntary association of individuals calling itself by that name and which was the preliminary organization formed for the purpose of promoting and procuring the complete incorporation of the company. Of this voluntary association the Messrs. Olmstead, Street, Minor and Parrott were the officers and directors. Mr. Hungerford commenced at once the performance of the contract on his part, and obtained contracts from many of the owners of land along the line of the proposed railroad, and expended in such work, as he claimed, much time and a large amount of money. On the tenth day of February, 1874, the company became duly and legally incorporated by filing with the secretary of the state its articles of incorporation as provided by the statute. Mr. Olmstead was made the president of the corporation, as he had been of the preliminary organization, and Messrs. Street, Minor and Parrott were made directors. On the 27th day of April, 1874, the corporation, by a duly authorized committee of its directors, consisting of the Messrs.

Olmstead, Street, Minor and Parrott, ratified and declared in writing the contract of the 12th day of September, 1873, (except that part that had reference to the line of road between the towns of Stratford and Derby) to be a binding contract between Mr. Hungerford and the corporation. The ratification was annexed to the contract, and is as follows:—

"The New York & Eastern Railway Company having been, since the execution of the foregoing contract, duly and legally organized, and the committee named herein having been appointed by the directors of said company, and duly authorized to make this agreement, it is hereby agreed, by and between the said committee and said Henry Hungerford, that the foregoing contract is ratified and declared to be a binding contract upon the parties, except as to that part of the same which provides for the procuring of land for the right of way from Stratford to Derby, which is not to be procured by said Hungerford. The amount for that reason to be deducted from the compensation of $500,000, in the paid-up capital stock of said company, to be paid to said Hungerford or his assigns, is to be a matter of further negotiation and settlement between the parties; and if they cannot agree it is to be fixed upon in the same manner as agreed in said contract for the settlement of any differences or disagreements that may arise between the parties."

The corporation preferred its petition to the General Assembly at the May session, 1874, praying for liberty to erect a railroad bridge across the Housatonic river as a part of its line, but the petition was dismissed and liberty to build the bridge was denied.

After the company became duly incorporated Mr. Hungerford continued in the business of procuring contracts from other owners of land and renewals of those contracts which had been previously made; and he claimed that he had obtained the right of way for more than fifteen miles of the distance of the line in such way that it was ready to be conveyed to the corporation. He claimed to have proved that in and about the obtaining of these contracts he spent more than seven months in actual days' work, with an as-

sistant for the whole time, and paid out more than six thousand dollars in cash in the necessary disbursements of the work; and that by reason of the acts and omissions of the company he was prevented from engaging in any other business or occupation from the date of the contract until February 10th, 1875. He claimed also that it would not have cost him more than $100,000 to have procured the entire right of way called for by the contract. For the purposes of the present discussion it must be taken that the several claims were proved and are true, as they are admitted by the demurrers to the remonstrance.

At the hearing before the committee Mr. Hungerford claimed that upon the facts of the case he was entitled to damages:—First, that for breach of contract by reason of the acts and omissions of the corporation there should be allowed to him as damages a sum equal to the par value in money of the $500,000 of capital stock of the corporation, less the sums it would have cost him to procure the right of way. Or, second, that there should be awarded to him such a proportionate part of the par value in money of the $500,000 of capital stock, less the cost of purchasing, as the part of the line which he had procured bore to the whole line. Or, third, that there should be awarded to him a sum equal to the fair value of the services and work he and those under him had performed, and also a sum equal to all the money he had disbursed, and such further substantial damages as he was legally and equitably entitled to for the breach of the contract. The committee overruled each of these claims and refused to allow any substantial damages as claimed by Mr. Hungerford, and allowed nominal damages only. The ruling and decision of the committee on these claims is the fourth ground of remonstrance. A demurrer to this ground of remonstrance was sustained. This is assigned for error in the reasons of appeal and presents the main question in the case.

Nominal damages mean no damages at all. They exist only in name and not in amount. In the quaint language of an old writer they are "a mere peg to hang costs on."

They are such as are to be awarded in a case where there has been a breach of a contract and no actual damages whatever have been or can be shown. The facts in connection with the claim of Mr. Hungerford, as found or as admitted by the pleadings, are such as under most circumstances would seem to require that more than nominal damages should be allowed. They show that Mr. Hungerford was ready and willing at all times, and able, to perform the contract fully on his part, and that he would have done so except that he was prevented from so doing, and so was prevented from earning the whole sum of $500,000 in the fully paid-up capital stock of the corporation, by the acts and omissions and inability of the company.

It is a general rule of law that one who violates his contract with another is liable for all the direct and proximate damages which result from such violation. It is a rule so obviously just and so well established by authority that it ought not to be called in question. It is also a rule of law that "in all cases of prevention of performance, where the plaintiff has been deprived by the defendant of the benefit of the contract, the plaintiff is entitled to recover what he has lost by the act of the defendant." Addison on Contracts, 881. See also Chitty on Contracts, (11th ed.,) 1323, note *b;* 1 Sedgwick on Damages, (7th ed.,) 473. In *Wells* v. *Abernethy*, 5 Conn., 227, this court laid down the same rule. Judge HOSMER, in giving the opinion, said:—"If the party omits to do what he stipulated, it is just, as a reasonable substitute, that he should pay the precise value of the thing he contracted to do." "When a contract has been violated the compensation of the party complaining of the violation should be the value of the contract. He has been deprived of his contract and he should have in lieu thereof its value. *Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. York, 211.

In *Taylor* v. *Bradley*, 39 N. York, 129, Judge WOODRUFF in the decision said :—"The only rule that will do justice to the parties is that the plaintiff is entitled to the value of his contract ; he was entitled to its performance, it is broken,

he is deprived of his adventure ; what was the opportunity which the contract had apparently secured to him worth ? To reap the benefit of it he must incur expense, submit to labor and the appropriation of his stock. His damages are what he has lost by being deprived of his chance of profit." See also *Brooks* v. *Hubbard*, 3 Conn., 58 ; *Dennis* v. *Maxfield*, 10 Allen, 138 ; *Chamberlin* v. *Scott*, 33 Verm., 80 ; *Stevens* v. *Lyford*, 7 N. Hamp., 360, 365 ; *Mitchell* v. *Gile*, 12 id., 395 ; *Smith* v. *Smith*, 2 Johns., 235, 243 ; *Gleason* v. *Pinney*, 5 Cowen, 152 ; *Planche* v. *Colburn*, 5 Car. & Payne, 58 ; *Inchbald* v. *Western Coffee Plantation Co.*, 17 C. B., N. S., 733. Many other authorities are cited in the notes to *Cutter* v. *Powell*, 2 Smith's Leading Cases (7th ed.,) 53.

The committee in one part of his report says :—" I do not find that from the 27th day of April, 1874, (the date of the ratification), the said Hungerford suffered any special loss or damage from the acts, omissions and inability of said corporation, and as he makes no special claim for damages from the time of the ratification of the contract until the failure of said corporation to obtain a grant to build said bridge, at which time it became apparent that the company could not carry into effect the provisions of their contract with him, I find that he necessarily suffered but little loss or damage after that time, and therefore find that he is entitled to nominal damages." In another place he says :—" I do not find said ratification of said contract in terms to be a ratification of the acts and doings of Mr. Hungerford in procuring said contracts from individuals for the right of way, nor do I find that the New York & Eastern Railway Company ever ratified said contracts in any other manner." It is evident from these extracts from his report that the learned committee was of the opinion that in estimating damages no regard whatever was to be paid to the contracts which Mr. Hungerford had obtained prior to the ratification by the corporation of its contract with him. In this respect we think he failed to give the full and proper effect to the ratification.

The corporation by its ratification of the contract pre-

viously made by its promoters became liable for everything that had been done pursuant to it. That contract was made by the promoters to aid the inchoate corporation, and it was a reasonable means for the carrying out of the authorized purposes of the company. It required Mr. Hungerford to commence *at once* to procure land. He did so commence, using forms of contracts provided by Mr. Olmstead, the president. The directors acted with full knowledge of all the facts, and with such knowledge they " ratified " the contract. That word itself means the adoption of a previously formed contract. Ratification relates back to the execution of the contract and renders it obligatory from the outset. By the nature of the act the party ratifying becomes a party to the contract and is on the one hand entitled to all its benefits and on the other is bound by its terms. *Edwards* v. *Grand Junction Railway Co.*, 1 Mylne & Cr., 650, 672; *Negley* v. *Lindsay*, 67 Penn. St., 217, SHARSWOOD, J.; Anderson's Dictionary of the Law, *in verbum; Low* v. *Connecticut & Passumpsic Rivers R. R. Co.*, 45 N. Hamp., 370; *Stanley* v. *Chester & Birkenhead Railway Co.*, 3 Mylne & Cr., 773. A corporation has power when fully organized to ratify a contract made by its promoters when it is one within the purposes for which the corporation was organized and appears to be a reasonable means for the carrying out of those purposes. Morawetz on Corporations, 549; *Touche* v. *Metropolitan Warehousing Co.*, L. R., 6 Ch. Appeals, 671. And the ratification makes the contract in all respects what it would have been if the requisite power had existed when it was entered into. *Whitney* v. *Wyman*, 101 U. S. R., 397; Angel & Ames on Corporations, § 304; *Church* v. *Sterling*, 16 Conn., 388; *Fleckner* v. *Bank of U. States*, 8 Wheaton, 363, STORY, J.

The fifth ground of remonstrance states that for the purpose of showing that Mr. Hungerford was entitled to no damage, even if the contract had been broken by the company, the company introduced Mr. H. R. Parrott, one of its directors and its secretary, as a witness, of whom it asked— " Was it practicable or possible to obtain subscriptions for

the road after the legislature refused to give you a charter
for the bridge ? "   To this question Mr. Parrott answered—
" It was utterly impossible to get subscriptions to stock or
to raise money to build the road."   This question and an-
swer were admitted against the objection of Mr. Hunger-
ford.   The bearing and effect of this testimony is made
clear by that portion of the committee's report where he
finds " that said company did not * * * cause their road
to be laid out and accepted by the railroad commissioners,
that they did not lay out and expend a sufficient sum as re-
quired by statute to enable them to continue their corporate
existence, and that they suffered their corporate rights to
expire, in consequence thereof, on the 10th day of Febru-
ary, 1875.   Nor did they issue any stock certificates, al-
though a small portion of stock had been subscribed for by
individuals, which stock has never had any market value,
and no value whatever except as assets in the hands of the
receiver to pay the past liabilities of said railroad company."

We think the admission of this evidence was error.   It
was allowing the corporation to take advantage of its own
acts and omissions to escape liability on its own contract.
The statute under which the corporation was organized re-
quired that before the certificate of its organization was
filed there must be *bonâ fide* subscriptions to its stock of at
least $5,000 for each mile of its proposed line,— in this in-
stance forty-six miles ; so that this railroad corporation
must have had at least $230,000 of *bonâ fide* subscriptions
to its capital stock for which it could have issued certifi-
cates, and which must have been worth their full face value.
How much more stock had been subscribed for by individ-
uals does not appear.   That no stock was issued was be-
cause the corporation decided not to issue any, and that is
the best possible reason why it never had any market value.
As none was issued clearly it could never have had any *market*
value, and no value whatever except as assets in the hands
of the receiver to pay the past liabilities of the corporation.

The corporation was organized for the purpose of build-
ing and operating a railroad from Greenwich to New Haven—

presumably for the profit of its corporators and promoters. It may be conceded that the success of the scheme depended largely upon obtaining permission to bridge the Housatonic river. It may be granted further that, having failed to obtain such permission, the directors acted prudently, so far as their enterprise was concerned, in permitting their corporate existence to expire. But neither of these considerations could absolve the corporation from its contract. It had stipulated with Mr. Hungerford to pay him $500,000, in the fully paid up shares of its capital stock. It could not without violating that contract permit its corporate existence to expire, or omit to issue its stock. The permitting itself to become disabled from performing the contract on its part was a violation of the agreement with Mr. Hungerford. When a party enters into an agreement which can only take effect by the continuance of a certain existing state of things, there is an implied engagement on his part that he will not by any act or omission of his own do anything to put an end to that state of circumstances under which alone the agreement can be operative. *Stirling* v. *Maitland*, 5 Best & Smith, 840. The case of *Inchbald* v. *Western Coffee Plantation Co.*, 17 C. B., N. S., 733, is clearly in point. The plaintiff was a broker and sued to recover the sum of four hundred pounds sterling. The defendant was a stock company formed to carry on the business of raising coffee, tea and cinchona, and had entered into negotiations with one Lascelles to purchase of him a plantation in the East Indies on which to carry on the business. The defendant then agreed with the plaintiff to pay him one hundred pounds down and four hundred pounds afterwards, when all the shares of the defendant should be placed, and in consideration thereof the plaintiff undertook to place all the shares of its stock. The plaintiff procured some shares to be subscribed for, but before he had procured the whole Mr. Lascelles refused to convey the plantation to the defendant. Thereupon the defendant's directors decided to abandon the enterprise, wound up the corporation, and returned to the stockholders who had subscribed the depos-

its they had paid. It was held that although the scheme of the defendant was rendered impracticable by the refusal of Mr. Lascelles to convey the plantation, yet as the winding up of the corporation was the voluntary act of the defendant, and as thereby they had prevented the plaintiff from earning the whole four hundred pounds, they were liable to him for that amount, less the risk he had; and the court assessed the damages at two hundred pounds. See also 2 Parsons on Contracts, (5th ed.,) 523; Chitty on Contracts, (11th ed.,) 89, 1059; *Planche* v. *Colburn*, 5 Car. & P., 58; *McIntyre* v. *Belcher*, 14 C. B., N. S., 653.

The sixth ground of remonstrance is that " on the hearing said company, for the purpose of showing that the performance of said Hungerford's contract depended upon said company's obtaining the right to bridge the Housatonic river, and that in the event of a failure to obtain such right said contract was to be terminated, asked said Parrott—' Did Mr. Hungerford know that the success of the road depended upon getting the bridge?' In answer the witness said—' I say Mr. Hungerford knew that the success of the road depended upon getting the bridge, because I talked with him on that very subject over and over again.' Mr. Hungerford duly objected to this evidence."

We think it was error to admit this testimony. The contract between Mr. Hungerford and the company was in writing, and all parol understandings and agreements were merged in it. Besides, the contract expressly exempted Mr. Hungerford from liability for procuring charters for drawbridges over navigable waters.

For the reasons here given we think the Superior Court erred in accepting the report of the committee

In this opinion the other judges concurred.