JOSEPH E. WATSON ET UX. *vs.* THE NEW MILFORD WATER COMPANY.

First Judicial District, Hartford, January Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Facts found by the trial court from the evidence before it, cannot be re-tried by this court on appeal.

Whether an injunction ought to issue to restrain the wrongful diversion of a portion of a stream, is a question resting in the sound discretion of the court governed by the nature of the case.

Some damage necessarily results from the mere invasion of the rights of a riparian owner; and although the amount in a given case may be small and in that sense nominal, the damage is nevertheless actual as distinguished from theoretical or technical damages. On the other hand, loss to the riparian owner caused by the acts of a wrongdoer in depriving him of some beneficial use of the stream, is positive, specific damage, the existence and amount of which must be established by proof.

A finding by the court, that from a time antedating the diversion of water complained of, the riparian proprietor did not apply the flow to any beneficial use, and could not have done so without incurring expense for the adaptation of the premises for that purpose, may be sufficient, in the absence of qualifying facts, to support a judgment denying specific damage; and the additional fact that at some prior time the flow of water had been put to a beneficial use, does not necessarily require a different judgment.

In the present case *W*, the husband of the plaintiff and coplaintiff with her, testified that the damage to the premises was confined to the loss of water power caused by the diversion of the stream by the defendant. *Held* that the trial court was not justified in treating this testimony as a stipulation that judgment might be rendered for the defendant, unless specific damage was proven.

Argued January 4th—decided January 26th, 1899.

ACTION for an injunction to restrain the further diversion of the waters of a stream above the plaintiffs' premises, and for damages, brought to the Superior Court in Litchfield County and, after certain rulings adverse to the plaintiffs upon a demurrer and motion to strike out, by *Elmer* and *Thayer, Js.*, tried to the court, *George W. Wheeler, J.;* facts found and judgment rendered for the defendant, and appeal by

the plaintiffs for alleged errors in the rulings and findings of the court. *Error and cause remanded.*

The facts on which the judgment is founded are as follows: "1. The plaintiffs intermarried January 20th, 1870, and have since lived together as husband and wife. 2. The plaintiff Julia A. Watson is the owner and possessor of a piece of land situated in the southerly part of the village of New Milford, on both sides of the highway known as Mill street. The portion north of Mill street contains 71 or 72 rods, and the portion south of Mill street about 2 acres. These premises are near the railroad and the factories in said village, *viz.*, a hat shop, an upholstery works and a foundry. 3. Said Julia A. Watson inherited these premises from her father, S. R. Hill, who died in April, 1873. 4. A stream of water known as Great Brook has from time immemorial run through said premises. Its watershed is and has been about 5 square miles, above plaintiffs' premises, and of such a character that the water falling therein runs off very rapidly. In the summer for three or four months the flow is small; for the rest of the year it is abundant. Such has always been the condition of the brook. 5. Said S. R. Hill, previous to 1871, and for many years, had been a millwright and conducted a grist-mill about eight miles from the village of New Milford. In 1871, Mr. Hill, then the owner of these premises, raised the level of the highway. Mill street, several feet, and used the same as the main part of a dam for the storing and ponding of water on the northerly side of said Mill street, and in 1871 or 1872, he erected a grist and feed mill on the southerly side of said street. 6. The water was conveyed from the pond formed on the northerly side of said street under the street by a penstock to the turbine water wheel running said mill. There was in the mill one run of stone geared direct to the wheel shaft. The mill could under an 11 foot head develop 16 horse power for ten hours a day in seasons of abundant rain, which were from eight to nine months of the year, and grind from 15 to 18 bushels of grain an hour, and in the season of summer for three or four months, running by heads from four to seven hours a day. It was impossible to run in the summer

season except by heads, that is by ponding and storing the water. 7. In order to secure said head of 11 feet, Mr. Hill overflowed for his pond about 40 rods of land on the north side of said street, which the plaintiffs sold in 1890 without any reservation of flowage rights, and he also flooded a considerable area extending northerly and westerly from lands owned by the plaintiffs, all which was done without having any right so to do, except for the greater part a license for which the licensor was paid by Mr. Watson after Mr. Hill's death. 8. Mr. Hill operated this mill until his death in 1873, successfully, and its operation was continued by his administrator until January 7th, 1874, when said dam was washed away in a freshet, and although the highway was rebuilt by the town, no pond was ever re-established and no attempt was ever made to utilize said stream upon said premises as a water power, and some time in 1891 the mill was burned and has never been rebuilt. Part of the embankment used for said dam still remains. The mill was never used after January 7th, 1874. 9. Said mill was used as a custom mill and in grinding feed and meal for the local grain dealers, and when the dam was washed away the mill was leased to a local dealer. 10. Great Brook is made up principally of two tributaries known as Park Lane Brook and Cross Brook, and each of these streams was of about the same size at their point of juncture. Cross Brook has a watershed of $\frac{3}{4}$ of a square mile or about one-seventh the entire watershed of Great Brook. Some time before 1875 a cider and saw-mill was operated on Cross Brook. 11. While this grist-mill was in operation on premises of plaintiffs, the flow of Great Brook was free and uninterrupted, and its flow to the present time through the premises of the plaintiffs would have been substantially the same but for the acts of defendant hereafter described. 12. It was never possible to secure adequate power to run this mill, except by the pondage referred to in paragraph 7, and it was never possible to run this mill in the summer season, for three or four months, except by heads, and then not to exceed four to seven hours a day. 13. The defendant is a corporation chartered by the General Assembly

in 1873, with full power to exercise the right of condemnation under its charter, which was approved June 17th, 1873, and it has under its charter acquired the control and possession of the watershed of Cross Brook. It has erected 4 reservoirs at different times, one distributing and 3 storage reservoirs, the latter with a capacity of 2 million, 12 million, and 46 million gallons, respectively. The 46 million reservoir was being erected when this action was brought. The defendant regulates the flow of the waters of Cross Brook for its own purposes and convenience, except that there is always a very considerable leakage from these reservoirs, making Cross Brook always a running stream. 14. The defendant has, since the completion of its first reservoir in 1875, supplied the village of New Milford with water to those wishing it, at a fixed schedule of prices, supplying domestic, manufacturing and railroad uses. The village has grown gradually, and the defendant has year by year supplied water in greater quantities and this increasing sale will probably continue. The reservoirs in use will in all probability be all that will be required for very many years to come. There is a demand in New Milford for power, provided it can be obtained uniform, and these premises are advantageously located for furnishing power. The defendant sells water to run motors, 1 in connection with a grain and lumber business, 1 for grinding coffee, 4 for blowing organs, 3 for turning fans in stores. For running machinery this power would not be available in the summer months, because not steady, and could only be used for such purpose with an auxiliary steam power. 15. All of the water used by defendant would, if not diverted by it, run through plaintiffs' premises. This use is a continuing and in a measure an increasing use, for which the defendant has never paid the plaintiffs, nor acquired any right to it by condemnation of plaintiffs' property. 16. During eight or nine months of the year the flow of Great Brook is not diminished by defendant so as to have any effect upon the stream as a water power; during three or four months of the summer season it is diminished from $\frac{1}{12}$ to $\frac{1}{20}$. 17. This diminution would not seriously affect the operation of this mill if

the plaintiffs had as large pondage as formerly. 18. These premises, without sufficient pondage to get a power of 10 or 11 feet, would have always been and are now valueless for water mill purposes. 19. In their present condition these premises could not develop a greater head or elevation than 6 feet, and it would be impracticable to operate a grist-mill with such head; and as a water power to operate machinery or for any other purpose it has no value. 20. There is no value to this water power even if the street could be used as a dam and the plaintiffs had the right, which they have not, to pond back to get a head of 10 or 11 feet, because business conditions have changed and a grist and feed mill at this point could not be operated advantageously or profitably, and for any other purpose this water power is of no value. 21. The defendant's acts have not done the plaintiffs any damage to their property as a water power, neither in its present condition, nor if it were possible for the plaintiffs to pond back so as to get a head of 11 feet. 22. There was no actual damage to these premises resulting from such diverson of the water, but if the law implied such damage it was purely nominal, which I assess at $1. 23. The plaintiff Mr. Watson was the plaintiffs' first witness. He testified that there was no damage to the plaintiffs' premises, except to the water power or privileges from the diminution of the flow of Great Brook, and he predicated the loss to his wife and himself upon this alone, and testified that the premises in question were not available for anything else. It was the undisputed evidence of other witnesses, including one of plaintiffs' witnesses, that there was no damage to the premises aside from the damage to the water power. Mr. Watson was actively promoting the plaintiffs' interests during the trial, so far as a layman and husband could do. He was in frequent consultation with plaintiffs' counsel and occasionally with his wife, who was present in court when Mr. Watson testified, and during the greater part of the trial while testimony was being taken. Mrs. Watson testified on rebuttal but not on the question of damage. From the above and from the testimony of both Mr. and Mrs. Watson, I find that he was the agent of Mrs.

Watson in all that he did in this case and in his statement of their claims as above. I regarded his statement of her claim under these circumstances as her statement of her claim. And because of this claim and the conclusion reached that there was no damage to the water power or to the premises, judgment as of file was rendered. 24. This diminution in the flow of Great Brook, present and prospective, is and will be of no actual damage to these premises aside from its use as a water power ; but because my understanding of the law would, upon the facts presented, have compelled a judgment to be rendered for the plaintiffs for nominal damages, I should have assessed the damages to the premises at $1 and rendered judgment for the plaintiffs in this amount, except for the facts and conclusions stated in paragraph 23. I did not regard the plaintiffs entitled upon the facts to equitable relief. 25. Upon the trial counsel for plaintiffs, in argument, claimed : (*a*) That the said Julia A. Watson, a married woman, being the owner in fee of the premises through which the natural stream in question was wont to flow, plaintiffs were entitled in law to have the waters thereof flow as they were wont to do, and without being diverted from said premises in the manner defendant was doing and intended to do by its said water works plant; (*b*) that the use of the waters of said stream by said defendant was not a reasonable and proper use, such as an upper proprietor had a right to make as against the property rights of said plaintiff proprietors aforesaid, and said appropriation and taking by defendant was an unlawful encroachment upon the plaintiffs' property rights, from which the law implies damage; (*c*) that the acts of the defendant constituted an unlawful taking and appropriation of the property of the plaintiffs ; (*d*) that in law the acts of defendant in appropriating, taking and using the waters of said Cross Brook as aforesaid, and diverting the same from plaintiffs' said premises, without their permission, against their consent and without making any compensation therefor, violated natural and legal right, and was an unlawful invasion of plaintiffs' rights and entitled the plaintiffs to the relief sought ; and (*e*) that by reason of the permanent character

of defendant's works, the continuous character of the injury complained of by plaintiffs and the contemplated future intention and conduct of defendant, plaintiffs were entitled to the relief claimed in their said action. The court held the claims of law stated above (except claims *d* and *e*, which claims. I overruled) to be good, and should have upon the facts rendered judgment for plaintiffs to recover $1 damages, but for the reasons stated in paragraph 23, *supra*."

The reasons of appeal, besides a number of errors claimed which are not material, assign error in rendering judgment for the defendant, upon these facts.

*Frederic M. Williams* and *James M. McMahon*, for the appellants (plaintiffs).

The water in question, and the right to use it is a part of Mrs. Watson's land, inseparably annexed to it; she owns it in fee. *Wadsworth* v. *Tillottson*, 15 Conn. 368. She is entitled to a judgment for its diversion, even if no actual damage is shown. *Chapman* v. *Thomas Mfg. Co.*, 13 Conn. 269; Cooley, Torts, 65, 66, and cases cited in note 1; *Parker* v. *Griswold*, 17 Conn. 288; *Harding* v. *Stamford Water Co.*, 41 id. 87; *Mason* v. *Hoyle*, 56 id. 256; *Kellogg* v. *New Britain*, 62 id. 232; *Perry* v. *Water Com'rs*, 69 id. 461; 8 Amer. & Eng. Ency. of Law (2d ed.), 558, and cases cited in notes, also page 555, note 3, and cases cited. An injunction is an apt remedy for continuous and increasing trespasses, especially where it is found that the trespasser intends to continue his unlawful acts and make them permanent. It was properly asked for in this case, and should have been granted, even if nothing but nominal damages are proved. *Neal* v. *Rochester*, 156 N. Y. 213; Beach, Inj. §§ 1035, 1059, and cases cited in notes; High, Inj. (3d ed.), §§ 702, 873; *Webb* v. *Portland Mfg. Co.*, 3 Sumner, 189; *Gardson* v. *Richardson*, L. R. 9 Ch. App. 221; *Smith* v. *Rochester*, 104 N. Y. 674. The trial judge erred in his conclusions based upon the testimony of Mr. Watson. None of the reasons given in par. 23 of the finding, are legally sufficient to support the judgment rendered.

*Howard F. Landon,* with whom was *Donald T. Warner,* for the appellee (defendant).

The decision of the trial court that there was no actual damage resulting from the diversion of the water, is final and conclusive upon the plaintiffs' claim that the court erred in not giving them substantial damages. This was a matter purely within the province of the trial court, being a question of fact (*New Britain* v. *Sargent,* 42 Conn. 138) and cannot be reviewed in this court. The court committed no error in refusing to award nominal damages. Mr. Watson's testimony was to the effect that there was no such damage. It is elementary law that " the distinct and formal admissions of an attorney bearing upon the issues involved may be the ground of the court's proceeding equally as if established by the clearest proof." *Oscanyan* v. *Arms Co.,* 103 U. S. 261. Matters to which a party has testified, are admitted by him, though no such admission is contained in the pleadings. *Judge* v. *Jordan,* 81 Iowa, 519. The case of *Parker* v. *Griswold,* 17 Conn. 288, relied upon by the plaintiffs, is not applicable in this case, because Mrs. Watson, being a married woman, the defendant could not gain any right or title against her by adverse user or prescription. In view of all the facts set forth in the finding, this is most certainly a case where the maxim " *de minimis non curat lex* " should be applied by the court. The court committed no error in refusing the plaintiffs an injunction. Injunctions ought to be granted only for the prevention of serious and irreparable injury, where the remedy at law would be inadequate. *Hawley* v. *Beardsley,* 47 Conn. 573, 574 ; *Fisk et al.* v. *Hartford,* 70 id. 732 ; *Ulbright* v. *Eufauld Water Co.,* 86 Ala. 587.

HAMERSLEY, J. The rulings of the trial court upon the pleadings have been assigned as error. These rulings did not injure the plaintiffs, and need not be considered.

The assignments of error, in finding from the evidence certain of the facts on which the judgment was founded, cannot be considered; facts so adjudicated by the Superior Court

cannot be retried by this court.  *Thresher* v. *Dyer*, 69 Conn. 404, 408.

The only material assignment of error is that the facts found do not support the judgment rendered.  Error on this ground is claimed because the court reached the conclusions that an injunction ought not to issue; that the plaintiffs have suffered no actual specific damage by reason of the wrongful diversion of the water; and that judgment should be rendered for the defendant,—when, as claimed by the plaintiffs, the legal conclusions from the subordinate facts found are precisely the contrary.

*First.* The special ground for injunction alleged in the complaint, that the defendant threatened to build other and larger dams and divert from the premises of the plaintiffs the remaining waters of the brook, is negatived by the finding. The mere fact of a partial wrongful diversion does not entitle the plaintiffs to an injunction as of right.  Granting an injunction must rest in the sound discretion of the court, governed by the nature of the case.  *Hawley* v. *Beardsley*, 47 Conn. 571, 573; *Fisk* v. *Hartford*, 70 id. 720, 732.  That discretion was lawfully exercised by the trial court.

*Second.* The question of actual specific damage by reason of the diversion, was one of pure fact, and the damages recoverable were such as already had been suffered by reason of the wrongful acts complained of.  Damages necessarily resulted from the legal injury found.  *Parker* v. *Griswold*, 17 Conn. *288, *302; *Nicholson* v. *New York & N. H. R. Co.*, 22 id. *74, *84.  This necessary damage is actual as distinguished from the mere nominal damage involved in a purely technical and harmless breach of contract, or in some casual and inoffensive tort; *Stanton* v. *New York & E. R. Co.*, 59 Conn. 272, 282; *Michael* v. *Curtis*, 60 id. 363, 369; *Allen* v. *Woodruff*, 63 id. 369, 374; but it is nominal as distinguished from any specific damage suffered and proved.  In a case like this some damage results from the mere invasion of the plaintiff's rights, and its amount, not being determinable by proof, must be comparatively small and in that sense nominal; whereas specific damage results from loss by reason of the

plaintiffs having been interfered with in the application of the water—to the natural flow of which he is entitled—to some beneficial use, by reason of the defendant's acts, and its existence and amount must be established by proofs. *Parker v. Griswold, supra.*

It is found by the court that from a time antedating the diversion of water by the defendant, the plaintiffs did not apply the flow of water to any beneficial use, and could not have done so without incurring expense for the adaptation of their premises to that purpose. This, in the absence of qualifying facts, supports the conclusion of no specific damage, and there is no other fact found which, as a matter of law, requires a different conclusion. The fact that at some-time in the past the flow of water had been profitably applied to running a grist-mill, does not necessarily prove specific damage, and did not require the court to estimate the injury that might have been done by the diversion if, during its continuance, the plaintiffs had built a dam and a mill and, under the Flowage Act, had condemned land for the necessary ponding of the water, and to assess damage as if such injury had really been inflicted. Even in proceedings for condemnation of a water right, such contingent sources of future profit are considered only in connection with all the testimony establishing a pure question of fact; and there is no principal of law requiring the assessment of damages at the amount of such possible profit. *New Britain* v. *Sargent,* 42 Conn. 137, 139.

*Third.* Judgment for the plaintiffs for damage resulting from the injury to their legal right, is the only legal conclusion from the facts found. The existence of the right in the plaintiffs and an invasion of that right by the defendant, necessarily imply damage, and, these facts being found, judgment must be rendered for that damage.

The fact of Mr. Watson's testimony, as recited in the finding, is immaterial; the court was not justified in treating it as a stipulation by the parties that judgment should be rendered for the defendant unless specific damage was found.

The error in the judgment is confined to the failure to assess

the damage due the plaintiffs for the defendant's wrongful act, in the absence of specific damage.

The statement in the finding of what would have been assessed if an assessment had been made, is not an adjudication of the amount. The cause must be remanded in order that such damage may be assessed. The court may also inquire as to the value of the plaintiffs' right, if such inquiry becomes necessary as incidental to the taxation of costs under § 1117 of the General Statutes.

There is error, the judgment of the Superior Court is reversed and the cause is remanded in order that damages may be assessed according to law.

In this opinion the other judges concurred.