# THE NEW HAVEN WATER COMPANY *vs.* THE BOROUGH OF WALLINGFORD.

Third Judicial District, New Haven, June Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The trial judge ought not to permit all the evidence in a case to be printed, when but a small portion of it bears upon the questions to be raised on appeal and such portion can be easily separated.

Property which has been or is about to be lawfully appropriated by a corporation to one public use, cannot be taken by another corporation for a public use inconsistent with the prior appropriation, unless such taking is expressly or impliedly sanctioned by legislative

enactment. But to constitute a valid appropriation there must have been an actual intent to take at once, or in the near future, and that intent must have been manifested and carried out by apt and suitable acts.

A corporation may reappropriate such portions of the waters of a stream as it had abandoned, provided there has been no valid intervening appropriation of the abandoned flow.

The purchase of land and water rights does not in itself and as matter of law constitute a valid present appropriation of the waters of a stream. At the most it merely indicates a general intent to appropriate the water at some indefinite time in the future, when it might be found desirable to do so.

A court may properly refuse to enjoin a municipality from diverting the waters of a stream to the damage of a riparian owner, when such action would cause great hardship to the inhabitants of the municipality which is willing and abundantly able to pay the damages.

Argued June 15th—decided October 5th, 1899.

SUIT for an injunction to restrain the defendant from diverting the waters of Pine river in Wallingford, brought to the Superior Court in New Haven County and tried to the court, *Roraback, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in the rulings and findings of the court. *No error.*

The questions in the case arise principally upon the finding, the material parts of which are, in substance, as follows: The plaintiff is a private corporation chartered by the legislature of this state in 1849, and since 1862 it has been, and now is, engaged in supplying the city and town of New Haven with water for public and domestic use, and is now the only corporation so engaged. The defendant is a municipal corporation of this State.

The Fair Haven Water Company was a private corporation, chartered by the legislature of this State in 1861 to supply the village of Fair Haven with water. In July, 1876, the plaintiff purchased the stock, property and franchise of the Fair Haven Water Company, and since that date has used the same as its own. In 1895, these two corporations, under legislative authority, were consolidated.

The plaintiff is now using, for the purpose of supplying New Haven, three lakes or ponds in the town of Orange,

distant from said city between three and four miles; one storage reservoir in the town of Woodbridge, distant from the center of said city about five miles; two storage reservoirs in the town of Bethany, one upon Sargent's river, about nine miles from New Haven, and another upon West river, distant about ten miles from New Haven; the water of Mill river, subject to an equal right of user for the purposes of the Whitney Arms factory, now leased to the Winchester Repeating Arms Company, at a point in the town of Hamden, in connection with a distributing reservoir partly in the town of Hamden and partly in the city of New Haven, on Prospect street; and Saltonstall lake, lying partly in Branford and partly in East Haven, and distant between four and five miles from New Haven.

The present average daily consumption of water supply by the plaintiff company is about 15,786,000 gallons. It is reasonably necessary, in order that the city of New Haven and its inhabitants and the defendant and its inhabitants may be amply supplied with water, and that a sufficient reserve may be maintained to guard against the dangers of accident, breaking of dams or machinery, and excessive droughts, that further provision should in the near future be made for supplying the wants of said city and said borough, in view of the rapid increase in population and of the demand for water in each. The approximate daily use of water supplied by the defendant corporation through its water system is about 700,000 gallons. A very large portion of the water supplied by the plaintiff corporation is used by manufacturing industries.

In April, 1876, the Fair Haven Water Company purchased a lot of land upon Pine or Muddy river, so-called, in Wallingford, and distant between ten and eleven miles from the city of New Haven; said land was a mere strip situated southerly of the highway between said land and the Tyler mill property, so-called, and extending on either side of Pine river about fifteen feet along the thread of the stream, and about twelve feet from the stream on each bank thereof. Pine river at said place is a mere stream or brook. Said land in-

cludes the bed and banks of said river. Said tract of land is of nominal value only, and worth not more than five dollars. It has no commercial or agricultural value, and is so located that no dam or reservoir can be built upon it, and the stream running through said land has very little fall. Neither the Fair Haven Water Company nor the plaintiff has ever in anywise improved or used said tract of land. In June, 1876, the Fair Haven Water Company deeded said strip of land to the plaintiff, and the plaintiff is and ever since has been the owner of said property.

In October, 1892, the defendant purchased and received a deed of a piece of land upon Pine river, above the Tyler mill property, and above the piece of land deeded to said Fair Haven Water Company, for the purpose of locating thereon and operating a pump and pumping station to take the waters of Pine river, and to appropriate the same to the public and private uses of the defendant corporation, pursuant to its charter; and defendant did as early as April 3d, 1893, erect and commence to operate said pump and pumping station and to pump the water from Pine river into its pipe lines, and has continued from time to time to operate said pump and to pump water from said stream into its mains, until it was stopped as hereinafter stated. The defendant, since taking said water in 1892, has acquired and paid for the privilege of taking and diverting said waters at said pumping station from several but not all the persons who owned and held water rights, mill rights and privileges upon said stream below said pumping station, and the amount paid for the same was about $2,200. Said taking of said water and the acquirements and purchases by the defendant of water rights, and the construction of said pump and pumping station, were all acquired, made, and purchased before the time when the plaintiff purchased or obtained any right or privilege upon or in or to the waters of said river, except the deed of the small piece of land to the Fair Haven Water Company in 1876.

On the 9th day of November, 1897, Charles J. Anderson, acting for the plaintiff, purchased and received deeds of Henry W. Tyler and George Tyler of the Tyler mill, so-called, the

property being described in said deeds as follows: "A certain piece of land, containing one acre, more or less, with the sawmill and other buildings thereon and the water privileges belonging thereto, situated in the town of Wallingford, in said State, on Muddy or Pine river, and upon the highway running northerly from Northford to the East Wallingford post-office, and known as Tyler's mills." On the 29th day of November the said Anderson conveyed said property to the plaintiff. Said Anderson, in like manner acting for the plaintiff in December, 1897, purchased and received from divers persons deeds of land on either side of said river between said Tyler mill and the land owned by the defendant and occupied by the pumping station of the defendant. Said property was deeded by Anderson to the plaintiff on January 4th, 1898. Said purchases were made in behalf of the plaintiff company with the knowledge of those so making them that the defendant corporation had erected and operated said pumping station and claimed the right to take said waters, and if the persons so making said purchases had made reasonable inquiry they could easily have ascertained the fact that the defendant corporation had purchased said mill and water privileges, and had paid therefor considerable sums of money in establishing said pumping station, and that the defendant intended to use and appropriate the waters of Pine river to public and private uses of the defendant corporation and its inhabitants. The total cost of said pumping station and of the expenses incidental thereto was about $10,000.

In 1882 the defendant corporation acquired the right to use the waters of Pistapaugh pond, hereinafter referred to, situated at the intersection of the towns of Wallingford, North Branford, Guilford, and Durham, and took the waters thereof and appropriated the same to the public and private uses of the defendant corporation and its inhabitants. The supply of water from said pond is insufficient for the present needs of the defendant and its inhabitants, and it is probable that it will be greatly insufficient for the future necessities

of the defendant, and it is necessary for the defendant to continue to use and appropriate the waters of Pine river.

No actual notice was at any time given by said defendant to the Fair Haven Water Company, or the plaintiff, that the defendant contemplated the taking of said water of Pine river, or the construction of said pumping plant. Neither has the defendant corporation tendered to the plaintiff any compensation for the taking of said water, nor taken steps toward having damages, if any, that have been suffered, assessed and paid to the plaintiff.

On the 2d day of January, 1894, the court of burgesses of the defendant borough passed the vote, a copy of which is annexed, marked Exhibit J* and on said date the defendant's board of water commissioners passed a vote in the same language; and on the 4th day of January, 1898, the court of burgesses of said borough passed a vote, a copy of which is annexed marked Exhibit K,† and on the 5th day of January, 1898, a vote was passed in the same language by the defendant's board of water commissioners.

It is necessary for the defendant to use and appropriate the waters from Pine river, and it has been at all times the intent of the defendant to continue such use and appropriation as soon as arrangements could be made to attain that end. The defendant has always intended and still intends

* *Exhibit J.* Whereas pursuant to the charter of the borough of Wallingford, the said borough has taken a part of the waters of Muddy river for the use of said borough, amounting in quantity to about six hundred thousand gallons daily, for a period of time extending from the first day of November to the first day of June in each year; and whereas the public and the said borough do not need and will not use a larger quantity under any circumstances than fifteen hundred thousand gallons per day; therefore, *Resolved* that the said borough will not under any circumstances take more than said fifteen hundred thousand gallons per day of the water from said river, and will take only during said period, to wit, from the first day of November to the first day of June in each year.

†*Exhibit K.* Voted, to rescind the resolution in relation to taking the waters of Muddy river, passed at the meeting of the court of burgesses held January 2d, 1894.

Voted, to take the waters of Muddy river for the uses of the borough.

to make compensation to any and all persons who have any claim for damages growing out of the taking of said waters, and is now both able and willing to make said compensation. Subsequent to the erection of said pumping station the defendant offered to pay to Henry W. Tyler, he then being the owner of the Tyler mill subsequently purchased by the plaintiff, the damage which might accrue to him from the taking of said water ; but no sum was ever paid or accepted by the said Tyler before the same was purchased by the plaintiff. The nature of the stream and the property through which it runs is such that it is doubtful whether the persons owning land thereon below the pumping station of the defendant have any just claims, except possibly for nominal damages.

The plaintiff offered in evidence the votes of the burgesses of the borough of Wallingford and the water commissioners, of the 2d day of January, 1894, and the defendant objected and excepted to the admission thereof; and in reply thereto the defendant offered the votes hereinbefore referred to of the 4th of January, 1898, rescinding the said prior votes. The plaintiff objected to said rescinding votes, but the court overruled the objection and the plaintiff duly excepted.

Divers exceptions to the action of the trial court with respect to the finding appear upon the record, wherein it is alleged that the court erred in finding certain facts without evidence, and in refusing to find certain facts which the plaintiff claimed were proved by evidence. These exceptions are sufficiently set out in the opinion.

The reasons of appeal are based upon said exceptions, and upon the action of the court in overruling the claims of the plaintiff as set forth in the finding, in its rulings upon evidence, and in rendering judgment for the defendant upon the facts found.

*George D. Watrous* and *Charles A. Harrison*, with whom was *Benjamin I. Spock*, for the appellant (plaintiff).

*Henry Stoddard* and *Oswin H. D. Fouler*, for the appellee (defendant).

TORRANCE, J. The reasons of appeal are forty-one in number, twenty-five of which relate to alleged errors in refusing to correct the finding, and these will be considered first. Some of these twenty-five assignments relate to the alleged action of the court in finding certain facts without evidence, but most of them relate to the refusal of the court to find certain facts upon what is alleged to be conclusive evidence. Many of these assignments relate to facts which are of slight importance in the case and were not argued orally before this court, nor are they alluded to in the briefs of counsel. Of these assignments the only ones which deserve to be separately considered at all, are those based upon the refusal of the court to find certain facts which the plaintiff claims were proved by conclusive evidence. These facts are summarized in the plaintiff's brief, in substance, as follows: (*a*) that the purchase of 1876 by the plaintiff was made for the purpose of taking the waters of Pine river; (*b*) that no owner of land between the defendant's pumping station and the plaintiff's purchase of 1876 had been compensated by the defendant; (*c*) that a reservoir could be constructed at the Tyler dam without flooding defendant's land; (*d*) that the defendant has diverted into Paug pond, and is using, water from other sources than Pine river, to which the plaintiff is entitled; (*e*) that the daily flow of the river is about six million gallons at the Tyler mill; (*f*) that a gravity supply for Wallingford can be obtained from Wharton brook at a less annual expense than that of pumping from Pine river; (*g*) that the gravity supply at Paug pond can be more than doubled at a very reasonable expense.

As to these facts we think (*b*) and (*c*) are substantially in the finding as made, and (*d*), even if it be regarded as conclusively proved, is immaterial in the present case. As to facts (*a*), (*e*), (*f*) and (*g*), we think the evidence in relation to each of them is either conflicting, or of such a character that this court cannot say that the trial court erred in refusing to find them.

This disposes of the assignments relating to the correction of the finding; but, in connection with this part of the case,

we ought not to pass in silence what appears to be a clear abuse of the statutory right, under certain circumstances, to have the evidence certified to this court.

The plaintiff, as was his right, asked to have certain portions of the evidence certified up, and thereupon the defendant claimed, either that the entire evidence should be printed, or that the court should certify that the evidence called for by the plaintiff was only a part of the evidence touching the several facts to which it was applicable. The evidence in the case, oral and documentary, covers more than three hundred printed pages; a large part of it has no bearing upon the questions raised upon this appeal, and all of it having such bearing may easily be separated from the rest. Under these circumstances the claim of the defendant was an unreasonable one and should have been disallowed. Only such parts of the evidence as were material to the questions proposed to be raised should have been printed.

Upon the merits of the case the general question is whether the court erred, upon the facts found, in refusing to grant an injunction.

Where a corporation has legally condemned property or has acquired it by purchase, for one public use, and has appropriated or is about to appropriate it to that use, such property cannot be taken by another for a public use inconsistent with the prior appropriation, unless such taking is authorized by the legislature either expressly or by clear implication. *Evergreen Cem. Asso.* v. *New Haven,* 43 Conn. 234; *Bridgeport* v. *New York & N. H. R. Co.,* 36 id. 255. The plaintiff says, in effect, that it comes within this principle with respect to the waters of Pine river. It claims (1) that in 1892, when the defendant first began to appropriate these waters, they had already been appropriated by the plaintiff under its charter; (2) that if so, they could not then be taken by the defendant, because it was not expressly nor by necessary implication empowered to do so. The second of these claims may be conceded, for the defendant is only authorized by its charter, in general terms, " to take and use the water of any stream, lake, or pond, in whole or in part," within the limits

of Wallingford or any town adjacent thereto; 9 Special Laws, 131, § 58; and this general power does not authorize it to take waters already appropriated to public use under prior legislative authority. *Boston Water Power Co.* v. *Boston & W. R. Co.*, 23 Pick. 360; *Old Colony R. Co.* v. *Framingham Water Co.*, 153 Mass. 561; *Boston* v. *Brookline*, 156 id. 172; *Evergreen Cem. Asso.* v. *New Haven*, and *Bridgeport* v. *New York & N. H. R. Co.*, *supra*. But the claim of prior appropriation is not found by the court, and is not sustained by the facts in the case. It is based entirely upon the purchase made in 1876, and the making of the map about the same time. The purchase was that of a small strip of land, of merely nominal value, which of itself could not be made of any practical use for the purposes of the plaintiff under its charter. The map was one which indicated, in a general way, all the streams, ponds and water sheds in New Haven and neighboring towns, which might possibly be made available as future sources of water supply. After this nothing more was done by the plaintiff looking to the appropriation of the waters in question for twenty years. During all this time it passed no vote to take this water, it did not take or attempt to take any of it, and it did no act whatever manifesting any intent to appropriate it. To appropriate in this connection means to take, to take to one's self as one's own; and prior appropriation means such a prior taking. To constitute an appropriation of this kind there must be an actual intent to take, presently, or in the near future, and that intent must be manifested and carried out by apt and suitable acts. Upon the facts found it cannot with reason be claimed, that prior to the appropriation of these waters by the borough, in 1892, the plaintiff had manifested any such intent to appropriate these waters, or had done any act which manifested or carried out such an intent if it existed; and we think there had been no such prior appropriation by the plaintiff.

The plaintiff next claims that if the defendant appropriated all the waters of Pine river in 1892, it abandoned part of them by the votes of its officials in January, 1894, and that before the votes of January, 1898, were passed, the

plaintiff had appropriated the water so abandoned and was entitled to an injunction on this account. This claim is founded upon the votes of January, 1894, by officials of the defendant, coupled with the purchase by the plaintiff in 1897 of the Tyler mill and other property along this stream. In November, 1892, the freemen of the defendant borough directed its water commissioners to take this water for the use of the borough, and in May, 1893, the court of burgesses and board of water commissioners, each, also voted to do so. Under these votes the pumping station was procured, and the pump erected and the water taken. . In January, 1894, said court and board each voted, in effect ( see Exhibit J), that the borough did not need and would not take more than a million and a half gallons of water from Pine river daily, and to that amount, only during the time specified in the vote. In January, 1898, each of said bodies voted in effect to rescind the limiting vote of January, 1894, and to take the waters of the river for the use of the borough ( see Exhibit K). In November, 1897, the plaintiff bought and had conveyed to it the Tyler mill property, and in December and January following bought and had conveyed to it other property on this stream, as set forth in the finding. It is upon these facts that the plaintiff's present claim is based.

We assume in favor of the plaintiff, without deciding, that the defendant abandoned part of the water in January, 1894; but this will avail the plaintiff nothing unless it is also true that it appropriated the abandoned water before the votes of January, 1898, were passed; for unless this be true, the defendant was at liberty, *quoad* this plaintiff as a water company merely, to again appropriate the abandoned water. The question, then, is whether the plaintiff, prior to the votes of the defendant's officials in 1898, had appropriated the abandoned waters. The court has not found specifically that it did so, and we think the facts found afford no basis for the plaintiff's claim upon this point. It does not appear that it knew of the existence of the votes of January, 1894, when it bought the property in 1897. Prior to these votes the plaintiff did not take the water, or any of it, it did not

vote to take it, and it did no act manifesting such an intent as would constitute an intent to appropriate the water. True it bought land, and it bought water rights along this stream; but these things in and of themselves did not constitute a prior appropriation as matter of law. Even if we assume them to have been the direct acts of the plaintiff corporation, they indicate at most a general and indefinite intent to utilize the property in some way, at some indefinite time, and to appropriate the water, under its charter, not at present or in the near future, but whenever it should desire and determine to do so later on. Upon the facts found we think the plaintiff, at the time the votes of 1898 were passed, can only be regarded, as against this defendant and in this case, as a riparian owner having the ordinary rights of such an owner.

The plaintiff objected to the admission of the votes of January, 1898, in evidence, on the claim that it had acquired the abandoned water by prior appropriation and therefore it could not be affected by the votes. As we hold that this claim was unfounded, it follows that the objection was properly overruled.

The plaintiff next claims that as a riparian owner it is entitled to the full flow of the river, and to an injunction to restrain the defendant from diverting the water, at least until it pays damages for such diversion. It is conceded that the defendant has not paid damages for diverting the water from the plaintiff's property, and that it is liable in damages for such diversion. But the real question in this case does not relate to the right of the plaintiff as riparian owner to damages, nor to the amount of such damages, nor even to its right, under certain circumstances, to an injunction restraining the diversion until damages have been paid; but it relates to the very different question, whether the trial court erred in refusing to grant an injunction upon the facts found. The answer to this question is to be looked for in the special facts found. The plaintiff bought its property in 1897 with full knowledge of what the borough had done prior to that time in this matter, and with full knowledge of all the other pertinent facts

spread upon the record.    The water diverted is necessary for the uses of the borough, and to enjoin the defendant from diverting it might cause great hardship.    This stream is practically the only source of additional supply open to the borough. It is found that it is doubtful whether the damages to riparian owners below the pumping station will be more than nominal; the borough has tried to settle for them, and is ready and willing and abundantly able to pay them as soon as the amount is ascertained.    Upon the facts found upon this part of the case the injunction was properly refused.    This disposes of all the points made in the case.

There is no error.

In this opinion the other judges concurred.