## SHEDD v. STATE LINE GENERATING CO.

District Court, N. D. Indiana, Hammond Division. August 22, 1929.

No. 166.

Ewbank & Dowden, of Indianapolis, Ind., Tinkham & Galvin, of Hammond, Ind., and Malcolm McCartney, of Chicago, Ill., for complainant.

Isham, Lincoln & Beale, of Chicago, Ill., Crumpacker & Friedrich, of Hammond, Ind., and Cooke, Sullivan & Ricks, of Chicago, Ill., for defendant.

SLICK, District Judge. Complainant, by his amended bill for an injunction, alleges that he is the owner of an undivided one-half of the fee-simple title to certain real estate in the city of Hammond, Lake county, Ind., and that the Public Service Company of Northern Illinois is a public utility corporation engaged in the manufacture, purchase, distribution, and sale of electrical energy to certain cities and towns and the public in general of the northeastern part of the state of Illinois, and that its main transmission lines are known as the "outer belt" around the city of Chicago, and are installed and planned to be installed over a 150-foot right of way; that

said outer belt system begins at a generating station on the shore of Lake Michigan at Waukegan, Ill., extends in a westerly direction to Crystal Lake, and then in a southerly direction to Joliet where it connects with a generating station and then continues through Chicago Heights and north to the southern limits of the city of Chicago at 138th street, at which point it joins the right of way of the Commonwealth Edison Company, another Illinois corporation supplying the city of Chicago with electricity, which latter company extends northerly to 108th street in the city of Chicago.

Continuing, the bill alleges that these two companies, together with the Northern Indiana Public Service Company, an Indiana corporation, by co-operative action acquired a site for a generating station on the shore of Lake Michigan in Indiana and just east of the Illinois-Indiana state line, and that said companies further by co-operative action caused to be organized the defendant, State Line Generating Company, an Indiana corporation, for the purpose of generating electrical energy in wholesale quantities for sale to the three companies above mentioned and to the Interstate Public Service Company. ·

It is further alleged that under said plan the stock of the defendant was issued to and purchased by said utility companies in the following proportions: Public Service Company of Northern Illinois, 30 per cent.; Commonwealth Edison Company, 40 per cent., Northern Indiana Public Service Company, 20 per cent., Interstate Public Service Company, 10 per cent.—and that said companies from time to time advanced to the defendant approximately $28,500,000 for the construction of the first unit of defendant's State Line Station.

Thereafter, to wit, on the 1st day of July, 1927, said Northern Indiana Public Service Company instituted proceedings in the Lake circuit court of Lake county, Ind., to appropriate for its own use a right of way 300 feet in width across complainant's property. Complainant, who was the defendant in said condemnation suit, appeared in said cause and filed objections to said proceedings, and, said cause being at issue, the court filed special finding of facts and conclusions of law.

The bill sets out the finding of facts and conclusions of law, which recite that the Northern Indiana Public Service Company is a public utility furnishing electrical energy to 105 cities, towns, and communities in Indiana, with a population of about 250,000, and, among the cities thus furnished with electrical energy, are East Chicago, Hammond, Whiting, Michigan City, Plymouth, Chestertown, Porter, Lafayette, West Lafayette, Angola, and cities, towns, and villages adjacent thereto, and that the Northern Indiana Public Service Company intends to use the property appropriated for the erection, construction, maintenance, operation, repair, and renewal of its electrical lines to transmit, deliver, and distribute electrical current in the territory above described in the state of Indiana.

The court further found that it was necessary for plaintiff in said condemnation suit to have a right of·way 300 feet in width through defendant's property in order that it might reasonably and efficiently supply the present and future demand of its customers for electrical energy. Judgment was entered April 11, 1928. Appeal was taken by complainant in this action (defendant in the condemnation suit) to the Supreme Court of Indiana on the 19th day of May, 1928, which appeal is still pending.

After said appeal, and shortly before December 22, 1928, the four companies who had co-operated together, in further pursuance of their plan, entered into four separate written contracts with the defendant, and said contracts provided for the sale of its product, electrical energy, by defendant to said utility companies in proportionate parts corresponding to the ownership of stock by said utilities. In these contracts defendant agrees to sell its product to the four utility companies mentioned and deliver the same "at the property line of the State Line Station in Indiana." The State Line Station is described as a 90-acre tract of land in the city of Hammond on the shore of Lake Michigan.

The bill then alleges that the Northern Indiana Public Service Company, plaintiff in the condemnation suit, is about to go upon the property of complainant for the purpose of constructing and maintaining a 132,000-volt steel tower transmission line, and that said company has caused surveyors to make a survey of its right of way and mark the places where towers will be erected, and has caused a power shovel and other excavating machinery to be moved onto said land preparatory to erecting said power line for the purpose of transmitting electrical energy in wholesale quantities through said outer belt transmission system of the Public Service Company of Northern Illinois into the system of the aforesaid Commonwealth Edison Company; said electrical power is to be furnished by the defendant which is now engaged in the construction of a 132,000-volt transformer and switch yard in its station in Hammond; and

that defendant is threatening to take, damage, and use complainant's property for the transmission of wholesale quantities of electrical energy over said right of way previously condemned by the Northern Indiana Public Service Company, and, in further pursuance of said plan of the defendant and said other utility companies, the Northern Indiana Public Service Company is proposing and preparing to construct said transmission line for the sole, exclusive, private, and wholly unauthorized use of the defendant for purchase by said Public Service Company of Northern Illinois and said Commonwealth Edison Company, under the aforementioned contracts.

The prayer of the bill is that defendant, its officers and agents, be perpetually restrained and enjoined from using or causing to be used the property of the complainant or any lines or cables constructed on said property for delivery and transmission of electrical energy produced by defendant into the transmission lines of the two Illinois corporations.

The bill of complaint covers 34 printed pages, and contains 23 pages of exhibits, and no attempt has been made to state in detail all the allegations therein.

A study of the bill discloses that the land described, to wit, 150 feet of a 300-foot right of way has been condemned by regular proceedings in a state court of Indiana, not by this defendant, but by another corporation, the Northern Indiana Public Service Company, and that this defendant is engaged in the manufacture of electrical energy and has contracted to deliver a large part of its energy to said Northern Indiana Public Service Company for transmission into the state of Illinois; said energy to be delivered at the property line of defendant. It is not alleged that defendant is proposing or has made any effort itself to go upon the property of complainant, but that it is selling its energy to other corporations, one of which has condemned the land of complainant and has erected or is erecting a power transmission line thereon. It is true the bill in general terms alleges that defendant and said other utility corporations are about to proceed upon the land of complainant and make a wholly unauthorized use of complainant's land, but the contract set up by complainant specifically directs that the electrical energy is to be delivered by defendant at its property line.

Complainant asks this court to hold that the 150 feet which it is proposed by the Northern Indiana Public Service Company to

use for the transmission of energy purchased from the defendant, shall be separated from the 300-foot right of way regularly condemned by the Northern Indiana Public Service Corporation. This I am unable to do. Here are five utility companies, defendant, a large generating company, under contract with four public service companies. The purpose of these companies is the manufacture, transmission, and distribution of electrical energy. They serve large territories contiguous to each other. A right of way 300 feet in width has been regularly condemned in a court of competent jurisdiction. These companies have entered into contracts for interchange of energy and for the making of certain connections between their systems. All these facts were before the Lake circuit court at the time of the condemnation suit, and that court judicially determined that the use to be made of the land condemned was a public use.

It is elementary that a court of equity will not intervene if the complainant has a full, complete, and adequate remedy at law. The statutes of Indiana afford complainant a full, adequate, and complete remedy. Under these statutes a new trial may be granted on account of newly discovered evidence if application is made during the term at which the judgment is rendered. Under another section a new trial may be granted on account of newly discovered evidence on a complaint filed in the court that rendered the judgment, not later than one year after the rendition of the judgment. And still under another section of the Practice Act a complaint for review of a judgment, other than for divorce, may be filed for material new matter discovered since the rendition of the judgment, and within three years thereof. Surely under one of these three Practice Acts complainant had a complete remedy at law. The whole theory of the bill is built around the allegations found on pages 27 and 28 of the amended bill, to the effect that the judgment of the state court in the condemnation suit was entered April 11, 1928, and appealed from May 19, 1928, and shortly prior to December 22, 1928, the contracts complained of were entered into. In fact, under the Indiana Code, the entering into these contracts might very well be considered material new matter discovered since the rendition of the judgment by the state court, and complainant, under section 670 of Burns' Annotated Statutes 1926, could still file his application for review.

But, even if this were not true, it is hard to see wherein the bill, when considered

in all its parts, states facts justifying equitable relief. The bill states that defendant is a manufacturing company and has contracted to deliver its product, electrical energy, at its property line in the city of Hammond. It is the owner in fee of the 90-acre tract on which its plant is located, and proposes to produce and sell electricity. Under the plain allegations of the bill, defendant is not threatening to go upon the land of the complainant for any purposes. The Northern Indiana Public Service Company is threatening to go upon complainant's land, and is proposing to build a large transmission line, and is proposing to conduct or cause to be conducted electrical energy over complainant's land, and, if its threatened action is unlawful, it possibly could be restrained, but defendant under the bill is not threatening to do anything except manufacture its product in large quantities and sell it at its property line at wholesale. This is not unlawful. But complainant alleges that it is proposing to use a part (150 feet) of the 300 feet condemned for this purpose, and that this 150 feet will be used for no other purpose than to deliver power to the Illinois companies. In other words, the Northern Indiana Public Service Company condemned 300 feet through complainant's property and proposes to devote a part thereof to the transmission of power for the benefit of citizens of another state. While it undoubtedly is the law that the power of eminent domain will not be exercised merely to benefit the public of a foreign state, but is limited in its operation to be used only for the benefit of its own citizens and communities, it should also be kept in mind that this right to condemn will not be refused merely because the peoples and communities of another state will be likewise benefited. To hold otherwise would be to take a too narrow and circumscribed attitude and in many instances result in effectually blocking large enterprises by limiting the benefits to be derived from their operations to an area entirely too small for efficient and profitable operation, and thus deprive the people of the state, in which the power is to be exercised, of the benefit of progress and industry.

The people of Indiana should be, and I think are, glad to have a large industry like the State Line Generating Company locate in the state. It furnishes employment to the community; it pays heavy taxes; it brings in executives and workmen who with their families settle and live in the community and add to the population and wealth of the state; it develops large quantities of electricity, which it sells to the people of Indiana. Now, if the company develops more energy than the present needs of the people of Northern Indiana require, shall we say to it, "You must limit your production to the requirements of our Indiana citizens," or shall we encourage the building and installation of a large industry by permitting it to sell a part of its product to our neighbors just across an imaginary line dividing Indiana and Illinois? Electrical power is as necessary to the life of a community as transportation or communication facilities. As well limit railroads, interurbans, bus lines, telephone or telegraph lines as to limit the production, transmission, and distribution of electricity. Defendant must have an outlet for its energy or limit its capacity. The time may come when the people of Northern Indiana will require all the energy defendant is able to produce and market. Against that time defendant should be permitted to produce and sell its entire capacity, even if a large amount goes into Illinois. When the time comes that the people of Indiana need all the energy defendant can supply, no doubt defendant will be glad of the opportunity to dispose of its product at home, but, if it should not, the courts and officers of the state will undoubtedly find a way to prevent discrimination against their own citizens and communities.

In this connection it should be remembered that the state court, in the proceeding to condemn, found that it is necessary to insure reliable and continuous service to have a reserve capacity of energy approximately equivalent to the maximum demand, and that such reserve is necessary to prevent interruption caused by accident or shutdowns; that there are two methods for providing against interruptions in the service, to wit, installation of units not needed but to be kept in reserve, or have interchange connections with other utilities; and that the first of these methods is impractical for the reason that it would require more capital and greater cost than the second method. It is further found that interchange connections had already been made with the Public Service Company of Illinois at the west end of a line running from Highland to Michigan City, and that another connection for interchange purposes would be made with the Commonwealth Edison Company at 108th street, and that the Northern Indiana Public Service Company had already entered into contracts with the Public Service Company of Illinois and the Commonwealth Edison Company permitting it to draw upon these companies for reserve and emergency purposes, and that said Northern Indiana Public Service Company is re-

quired under said contracts to supply the said Illinois companies in case of their necessity from its reserve energy, and that neither of said connecting companies has the right to demand or receive power to the extent that it would interfere with the services of the selling company to its customers, and the court specifically found that this connection between the Northern Indiana Public Service Company and the Illinois utilities at the state line will afford the Northern Indiana Public Service Company a means of marketing its surplus energy, and that the lines to be constructed by the Northern Indiana Public Service Company on the lands of the complainant would be connected with the State Line Generating plant when completed, and that the Northern Indiana Public Service Company will purchase and receive energy from the State Line Generating Company to be used by the Northern Indiana Public Service Company to supply its customers in Indiana and will be subject to the demand of the Illinois Public Service Companies.

All this clearly shows that all the facts depended on in the bill in this case were before the Lake circuit court at the time the condemnation suit was tried, a complete record of which appears in the bill in this case.

The motion of defendant to dismiss the amended bill for want of equity is sustained.