HAROLD P. FARRINGTON *v.* EDWARD KLAUBER.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued May 4—decided June 4, 1943.

*Thomas A. Keating,* with whom, on the brief, was *David Goldstein,* for the appellant (plaintiff).

*William B. FitzGerald,* for the appellee (defendant).

DICKENSON, J. The defendant erected a dam across a small watercourse that flowed on his land from adjoining land of the plaintiff. The plaintiff brought this action claiming the dam and artificial obstructions in the bed of the brook on the defendant's land caused water to set back and overflow his land. He prayed for an injunction against the maintenance of the dam and obstruction, for a restoration of the former water level, and for damages. Judgment was rendered for the defendant from which the plaintiff appealed. His claims of error relate to the facts found and conclusions reached by the trial court. These, so far as they are necessary for the decision of the case, were as follows:

The watercourse had run through the properties in question for many years. Prior to June 11, 1936, the land bordering it on both sides on both properties was swampy, boggy and bush grown. On that date the defendant made excavations about four feet deep on his land for the purpose of creating an artificial pond and swimming pool and built a concrete dam about six hundred and ten feet distant from the boundary line between the two properties. The dam was built to receive flashboards to further raise the level of the

water on the defendant's land. It was completed in October, 1936. The top of the spillway was a few inches higher than the bed of the brook at the boundary line and a few inches lower than the ordinary level of the water in the brook at that point. The natural depth of the brook at the boundary line varied between one and two feet. The highest flashboards when installed were about fourteen inches above the height of the spillway. Between the boundary line and the dam, and from three to fifteen feet from the boundary line, the bed of the brook was from nine inches to a foot higher than that at the boundary line. This was a natural conformation and not, as the plaintiff claimed, an artificial obstruction placed there by the defendant as a ford to the brook. This conformation was from six to nine inches higher than the top of the spillway, but lower than the top of the flashboards when these were in place. From these facts it appears, since water seeks its level, that the dam itself would not interfere with the natural flow of the brook, its spillway being lower than the natural conformation of the brook above it, but that the flashboards might interfere with the flow. This, however, does not take into consideration the effect of runoff present in confined waters. There was no computation as to this, but there was evidence as to the effect or lack of effect of the dam, flashboards and conformation of the bed of the brook on the stream above these, and the trial court found from this that at no time had the defendant's acts substantially raised the water level on the plaintiff's land.

The trial court's finding so far as material to the decision of the case is adequately supported by evidence and the court had ground for discrediting contrary evidence by the plaintiff. Trial of the action was started in March of 1941, and thereafter, at the suggestion of the court, the parties agreed that it might

be continued to the fall term so that conditions in the brook might be checked further during the spring and summer. During these seasons the plaintiff took numerous water level readings and produced them in evidence when trial was resumed in the fall. It appeared, however, that he had also made excavations on his own land which the court believed frustrated its plan of a check on existing conditions and tended to discredit his evidence.

The plaintiff, in his brief, states the issue to be the simple one whether his land has been flooded by the defendant's acts. Even were this the sole issue, it was justifiably resolved in favor of the defendant on the evidence. But the plaintiff has now confined his claim to equitable relief. Such past injury as he might have had is only relevant to probable future injury, and the trial court has found on sufficient evidence that there is no probability of such injury.

It is well established that "those who own the adjoining soil, have a right to require, that the water shall flow in the accustomed manner" and that an action will lie against one who interferes with this right by one who is injured; *King* v. *Tiffany*, 9 Conn. 162, 165, 168; *Buddington* v. *Bradley*, 10 Conn. 213, 217; *Robertson* v. *Lewie*, 77 Conn. 345, 346, 59 Atl. 409; and that it is not so important to prove actual damage where water rights are concerned in a suit in equity. *Sisters of St. Joseph Corporation* v. *Atlas Sand, Gravel & Stone Co.*, 120 Conn. 168, 173, 180 Atl. 303. But, certainly, where there has been no substantial invasion of the plaintiff's rights, the issuance of an injunction rests in the sound discretion of the trial court. *Watson* v. *New Milford Water Co.*, 71 Conn. 442, 450, 42 Atl. 265. The instant case falls within that principle.

Unusual care was taken by the trial court to see that

justice was done the parties. It viewed the premises on three separate occasions, continued the trial for many months for further check on conditions and gave the parties every opportunity to secure and produce evidence. We are satisfied that the trial court exercised a sound discretion in the instant case.

There is no error.

In this opinion the other judges concurred.