ELSIE B. ADAMS ET AL. *v*. THE GREENWICH WATER COMPANY

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, JS.

Argued June 13—decided August 7, 1951

W. *Arthur Countryman, Jr.,* and *John N. Cole,* with whom was *Walter N. Maguire,* for the appellants (plaintiffs).

*William C. Strong,* with whom, on the brief, was *Alfred T. Chabot,* of the New York bar, for the appellee (defendant).

Inglis, J.  The plaintiffs, who are riparian owners along the Mianus River in Greenwich, instituted this action to enjoin the defendant from diverting, and from attempting to take by condemnation, any of the waters of that stream.  The defendant filed a cross complaint claiming a declaratory judgment determining whether it has the right to condemn the water rights although part of the benefits may accrue to inhabitants of Port Chester, New York.

The finding, with minor additions which must be made, establishes the following facts: The properties of the plaintiffs are estates with elaborate private residences, representing an investment of many thousands of dollars.  Some of the owners have created artificial ponds and islands in the Mianus River.  They all use the river for swimming, fishing and skating and draw water from it for their lawns, gardens and livestock and, on occasion, for fire protection.  There is no public water supply system serving the neighborhood.  In many instances the owners purchased and improved their properties because of the river frontage thereof, and, to some extent, the river enhances the value of the real estate.  The river originates in New York state and about 50 per cent of its watershed is in that state.  It crosses the Connecticut line in Stamford, then flows south and east through Stamford and Greenwich and empties into Long Island Sound at Cos Cob.  It is a flash stream, and at and below the point of the proposed

reservoir, hereinafter referred to, its flow varies from 1.5 million to 200 million gallons a day.

The defendant is a corporation specially chartered by the Connecticut General Assembly in 1880. 8 Spec. Laws 406. By virtue of its charter and amendments thereof, it has the franchise to furnish water for public and domestic use in the town of Greenwich, in a small portion of the town of Stamford adjacent to the Mianus River, in the town of Rye, New York, including Port Chester, and in Westchester County, New York, whenever that use in Westchester County will not curtail the supply adequate for the inhabitants of Connecticut. In the summer of 1929 the defendant, in order to supplement its water supply, started to pump water from the Mianus River at Farms Road, which is upstream from the plaintiffs' properties. The riparian owners instituted suits, and as a result of their action the defendant entered into a contract in 1933 with the Stamford Water Company for a supplemental supply of water and ceased the taking of water from the Mianus.

A period of extreme drought occurred in the summer of 1949. The defendant's water supply diminished rapidly. By August 1 its reservoirs were only about 60 per cent full. Notice was received that the Stamford Water Company would have to reduce the amount of water to be furnished by it below the four million gallons daily called for by the contract. Thereupon, on August 9, 1949, the defendant began pumping water, at the rate of about a million gallons daily, from the Mianus River at Farms Road into a pipe line which led into one of its reservoirs. When this came to the attention of the plaintiff Altschul, inquiries were made of the defendant on her behalf and a series of conferences and letters between the parties ensued. The defendant acknowledged that it had no legal right to divert the water as it was doing without purchasing or condemning the

water rights but took the position that conditions required it to do so. It was finally agreed that the defendant would dismantle its pumping station after the termination of the emergency and in any event not later than December 31, 1949. However, the continuance of the drought, the state of the defendant's water supply and the public need necessitated the continuance of the pumping after December 31. In the meantime, the defendant obtained an additional supply of water amounting to 61 million gallons by arrangement with the owners of a lake known as Converse Lake. On January 1, 1950, the defendant had less than forty days' supply of water on hand, and on February 4 the Stamford Water Company cut off its supply completely. This necessitated the installation of an additional pump and the pumping of a greater quantity of water from the Mianus. Between August 9, 1949, and June 1, 1950, the approximate date of the trial of this case, the defendant diverted from the river an average of 1.56 million gallons daily. During that same period the average flow of the river was 16.2 million gallons daily. At no time did the defendant cut off the flow in the river completely, although during the driest period of the diversion the defendant was taking more than half of the flow. During most of the period the flow of the river was in such quantity that the diversion resulted in no inconvenience or detriment to the plaintiffs. Even during the driest periods the plaintiffs suffered no actual or substantial damage.

The original charter of the defendant granted it the right to take by eminent domain any land or water in the town of Greenwich for its corporate purpose. 8 Spec. Laws 406. In 1927, after its franchise had been extended in 1925 to include the furnishing of water to Rye (19 Spec. Laws 848), the General Assembly granted it authority, for the purpose of supplying water

for public or private use, to take by eminent domain, purchase or otherwise all or any part of the waters of the Mianus River, to construct such reservoirs as it might deem necessary to impound such water, and to take by eminent domain, purchase or otherwise such property as it might deem necessary for the construction of reservoirs, the protection of its watershed or any other corporate purpose. This authority, however, was made subject to the right of the New York, New Haven and Hartford Railroad Company to take water from the Mianus River for its electric power generating plant at Cos Cob, up to, after 1941, five million gallons daily. 20 Spec. Laws 429.

At the present time the defendant has as reservoirs Rockwood Lake, Putnam Lake and Brush Dam, with a total maximum storage capacity of 1,086 million gallons. As an additional source of supply, the defendant has the contract, referred to above, with the Stamford Water Company, whereby the latter is obligated, subject to acts of God, to furnish the defendant six million gallons daily for the first six months of each year and four million gallons daily for the balance of the year. This contract expires in 1953. For various reasons this contract can no longer be counted upon to provide a reliable source of supply. The water coming from the Stamford Water Company is pumped through a twenty-inch pipe line into Rockwood Lake. Rockwood Lake and Converse Lake empty into Putnam Lake. At the lower end of Putnam Lake is a filter system through which the water passes into one main which leads to Greenwich and another which leads to Rye. All of the water supplied to Rye is sold and delivered at the state line to the Port Chester Water Works, Inc., an affiliated company. The defendant does not now serve, or plan to serve in the future, any of Westchester County outside of Rye.

A water company in the situation of the defendant should plan for a supply of water to meet conditions as they will be at least ten and preferably fifteen or twenty years in the future. The safe yield of the defendant's present water supply system, not including the water it receives under its contract with the Stamford Water Company, based on experience during the dry year June 1, 1949 — June 1, 1950, is only about four million gallons daily. In 1949 Greenwich consumed about five million gallons daily and Port Chester and Rye about four million. It is estimated that in 1960 there will be required for Greenwich 6.8 million gallons a day and for Port Chester and Rye 4.3 million, while in 1970 Greenwich will take 8.75 million gallons daily and Port Chester and Rye 4.65 million. Thus it appears that the safe yield of the defendant's own system without aid from the Stamford company was not adequate in 1948-49 to take care of the needs of the defendant's Connecticut customers alone, and as time goes on this yield will become less able to do so. To meet this condition, the defendant plans to construct a reservoir by damming the Mianus River above Farms Road. This will give the defendant additional storage capacity of approximately 2,200 million gallons. From this reservoir certain quantities of water will be conducted through the present pipe line into Rockwood Lake. The defendant will be bound to allow enough water to flow down the river to meet the needs of the New York, New Haven and Hartford Railroad Company, and its plan is to release sufficient water down the stream to equalize the flow over the entire year. A portion of the proposed reservoir and a major portion of its watershed will be in New York state, and the land for that portion will be acquired by the Port Chester Water Works, Inc. The defend-

ant has no permanent source of water storage available to it other than the Mianus River.

On the foregoing facts the trial court concluded that, because the damage suffered by the plaintiffs from the diversion of the water of the river was far outweighed by the utility of the defendant's conduct and the interests of the public therein, no injunction should issue against future diversion. It also decided, with reference to the prayer for a declaratory judgment, that the defendant may exercise its right of eminent domain in respect to lands and water rights on the Mianus River, "including those of the plaintiffs," in order to increase its water supply storage, although a portion of such additional supply may be delivered to and used by those inhabitants of the state of New York to whom the defendant may supply water under existing legislative grants. It followed from this that the prayer for an injunction against such condemnation was denied.

We will first consider the question whether the defendant has the power to condemn the water rights of the plaintiffs for the purpose of constructing its proposed reservoir. Clearly, the General Assembly, by the amendment of the defendant's charter in 1927, purported to grant it that right. The taking of water by a water company chartered to supply water to the public is a taking for a public use. *Water Commissioners* v. *Manchester,* 87 Conn. 193, 207, 87 A. 870; *Olmstead* v. *Camp,* 33 Conn. 532, 546; *Todd* v. *Austin,* 34 Conn. 78, 85; *Connecticut College for Women* v. *Calvert,* 87 Conn. 421, 428, 88 A. 633. When the legislature endows a public utility company with the power to take by eminent domain such property as is necessary to fulfill its corporate purposes without restriction, the determination of what is necessary to be taken lies in the discretion of the company. The courts will interfere with the exercise of that discretion only in cases

of bad faith or unreasonable conduct. *Water Commissioners* v. *Johnson,* 86 Conn. 151, 158, 84 A. 727, and cases cited; *Water Commissioners* v. *Manchester,* 89 Conn. 671, 679, 96 A. 182; *Bridgeport Hydraulic Co.* v. *Rempsen,* 124 Conn. 437, 441, 200 A. 348; see *Munson* v. *MacDonald,* 113 Conn. 651, 656, 155 A. 910. On the question of the necessity of a taking, needs which will arise in the reasonably foreseeable future must be taken into consideration. *New Haven Water Co.* v. *Russell,* 86 Conn. 361, 369, 85 A. 636; *Central Pacific Ry. Co.* v. *Feldman,* 152 Cal. 303, 306, 92 P. 849; *Kountze* v. *Morris Aqueduct,* 58 N. J. L. 303, 306, 34 A. 1099; *In Matter of N. Y. C. & H. R. R. Co.,* 77 N. Y. 248, 264. Upon the subordinate facts found, there can be no question that it is reasonably necessary for the defendant to acquire water rights for the construction of a reservoir in the Mianus River in order to continue to furnish an adequate supply of water to its customers in Connecticut, to say nothing of the users of its water in New York state. The court would not be warranted in concluding the contrary.

The position taken by the plaintiffs, however, is that the proposed taking will benefit residents of New York and that, therefore, the 1927 amendment of the defendant's charter either should be so construed as to limit the taking of water rights to such taking as will be necessary to furnish an adequate supply of water to Connecticut residents or should be held unconstitutional. They say that, in so far as the defendant proposes to construct a reservoir greater in capacity than is necessary to supply its customers in Connecticut, such a reservoir is for the exclusive benefit of non-residents. It is true that no state is permitted to exercise or authorize the exercise of the power of eminent domain except for a public use within its own borders. *Trombley* v. *Humphrey,* 23 Mich. 471, 476;

*Grover Irrigation & Land Co.* v. *Lovella Ditch Co.*, 21 Wyo. 204, 255, 131 P. 43; 1 Lewis, Eminent Domain (3d Ed.) § 310. It is apparently universally held, however, that if a taking of property by eminent domain is for a public use within the state authorizing it, such a taking is not to be prevented because it will also serve a public use in another jurisdiction. *Colgate* v. *Philadelphia Electric Power Co.*, 20 F. 2d 263, 264, appeal dismissed, 276 U. S. 589, 48 S. Ct. 207, 72 L. Ed. 719; *Shedd* v. *State Line Generating Co.*, 34 F. 2d 287, 290, cert. denied, 282 U. S. 884, 51 S. Ct. 87, 75 L. Ed. 780; *Columbus Water Works Co.* v. *Long,* 121 Ala. 245, 248, 25 So. 702; *Gilmer* v. *Lime Point,* 18 Cal. 229, 252; *Twin City Power Co.* v. *Savannah River Electric Co.*, 163 S. C. 438, 475, 161 S. E. 750, cert. denied, 284 U. S. 574, 52 S. Ct. 17, 76 L. Ed. 499; *State ex rel.* v. *Oliver,* 162 Tenn. 100, 111, 35 S. W. 2d 396; *Brooke Electric Co.* v. *Beall,* 96 W. Va. 637, 643, 123 S. E. 587; 13 Cornell L. Q. 88. This principle applies even though the major portion of the public use will benefit nonresidents. *Rogers* v. *Toccoa Electric Power Co.*, 163 Ga. 919, 921, 137 S. E. 272; *Washington Water Power Co.* v. *Waters,* 19 Idaho 595, 608, 115 P. 682; *Shedd* v. *Northern Indiana Public Service Co.*, 206 Ind. 35, 46, 188 N. E. 322; *In re Townsend,* 39 N. Y. 171, 176; *Carnegie Natural Gas Co.* v. *Swiger,* 72 W. Va. 557, 573, 79 S. E. 3; note, 90 A. L. R. 1032. If the taking is for a public use which will provide a substantial and direct benefit to the people of the state which authorizes it, it is a proper exercise of the power of eminent domain even though it also benefits the residents of another state.

The General Assembly granted the defendant the franchise to sell water for use not only in the state of Connecticut but also in the state of New York. The motives which induced this action did not appear, but

many might be suggested. Upon the record before us, it can only be assumed that the General Assembly felt that the granting of a franchise to furnish water to residents of New York was in aid of a public use for the residents of Connecticut. Accordingly, we must assume, in the absence of facts showing such assumption to be unreasonable, that the right and the ability of the defendant to continue to sell water for use in New York are for the benefit of the residents of Greenwich and Stamford. Any taking of property which is necessary to provide for the continuance of sales in New York is for that reason a taking for a public use in Connecticut.

There is no finding of what the safe daily yield of the proposed reservoir will be. The plaintiffs have failed to prove that that safe daily yield will be in excess of what will, in the reasonably near future, be needed for the adequate protection of the company's customers in Connecticut. It may well be that a reservoir with the storage capacity planned will, together with the defendant's other reservoirs, yield no more in extremely dry weather than will be consumed in Connecticut. If that were the case, the furnishing of water to Rye and Port Chester when there was a surplus would detract nothing from the use of the reservoir by Connecticut residents. And, even though that were not the case, it is clear that the reservoir is or soon will be needed to provide an adequate supply for Greenwich and a portion of Stamford. It will be a substantial benefit to the citizens of this state. Under the law, therefore, there is justification for the exercise of the power of eminent domain even though it may also benefit nonresidents. The trial court was correct in refusing to enjoin the defendant from condemning the water rights of the plaintiffs in order to permit the construction of the proposed reservoir.

Whether the trial court should have entered the declaratory judgment to the effect that the defendant had the power to condemn lands and water rights for the reservoir is another question. It is to be noted that the decision that the plaintiffs were not entitled to an injunction against such condemnation completely adjudicated the question of the defendant's right to condemn as between the parties to this action. The declaratory judgment added nothing to that and was not necessary. For that reason is should not have been entered. *Newington* v. *Mazzoccoli*, 133 Conn. 146, 157, 48 A. 2d 729, and cases cited. Moreover, the declaratory judgment as entered purported to bind not only the plaintiffs but also all persons whose lands or water rights on the Mianus River were to be taken for the proposed reservoir. It is obvious that there are many such persons who are not parties to this action. A declaratory judgment ordinarily should not be rendered unless all persons having an interest in the subject matter are parties to the action. Practice Book § 250 (d); *Brennan* v. *Russell*, 133 Conn. 442, 445, 52 A. 2d 308. Under these circumstances, it was not a proper exercise of the court's discretion to enter the declaratory judgment.

We turn now to a consideration of the plaintiffs' prayer for an injunction restraining the defendant from further diverting the water of the Mianus by pumping. It is well established that a riparian owner is entitled to have the water of the stream upon which he borders continue to flow in its wonted manner. *Farrington* v. *Klauber*, 130 Conn. 170, 173, 32 A. 2d 644. Any infringement of that right entitles him to relief, at least by way of damages, even though the actual, provable damage is small. *Sisters of St. Joseph Corporation* v. *Atlas Sand, Gravel & Stone Co.*, 120 Conn. 168, 173, 176, 180 A. 303; *Watson* v. *New Milford*

*Water Co.*, 71 Conn. 442, 450, 42 A. 265. It does not necessarily follow, however, that he is entitled to relief by way of injunction, for the granting of such relief lies in the sound discretion of the court. *Farrington* v. *Klauber*, supra; *Watson* v. *New Milford Water Co.*, supra.

The trial court denied the injunction in this case because it concluded that to grant it would result in damage to the defendant disproportionate in amount to the damage refusal of the injunction would cause the plaintiffs and would be detrimental to the public interest. In an action involving riparian rights, a mandatory injunction should ordinarily be refused on the theory of comparative damage between the parties only when the infringement of the plaintiff's rights was under an innocent mistake or a bona fide claim of right on the part of the defendant, or where his conduct was not wilful and inexcusable, or where the plaintiff has been guilty of laches. *Sisters of St. Joseph Corporation* v. *Atlas Sand, Gravel & Stone Co.*, supra, 175; *Bauby* v. *Krasow*, 107 Conn. 109, 115, 139 A. 508. A fortiori, a restraining injunction should not be denied on the theory of comparative damage except under those circumstances, if at all. In the present case, only a restraining injunction was sought. The diversion of the water was without any claim of right, was wilful and, except for the consideration of the public interest, which will be discussed in a moment, was inexcusable. Accordingly, to deny the injunction purely on the theory of comparative damage was an abuse of the court's discretion.

The limitations on the propriety of the denial of an injunction on the theory of comparative damage between the parties do not apply to the refusal of an injunction which, if issued, would seriously affect public interest. It is well within a court's discretion

to deny an injunction against the infringement of riparian rights if to grant it would adversely affect the interest of the public. *New Haven Water Co.* v. *Wallingford,* 72 Conn. 293, 305, 44 A. 235; *Fisk* v. *Hartford,* 70 Conn. 720, 732, 40 A. 906; see *Mitchell* v. *Southern New England Telephone Co.,* 90 Conn. 179, 183, 96 A. 966; *Whittlesey* v. *Hartford, P. & F. R. Co.,* 23 Conn. 421, 432. The subordinate facts found amply supported the court's conclusion in the instant case that the issuance of the injunction prayed for would seriously and adversely affect the public interest at the time the case was tried. Except for one consideration, therefore, the denial of the plaintiffs' prayer for that injunction was correct.

That consideration is this: The plaintiffs do have property rights to the accustomed flow of the Mianus River. In the emergency of a drought the public interest may require the court to refuse to protect those rights by way of injunction. However, the riparian owners ought not to be deprived permanently of those rights without compensation. If the judgment of the trial court stands in its present form, there is nothing to prevent the defendant from continuing indefinitely to pump water from the river as the most economical way of getting its required supply. By doing this it might well be able to avoid the building of its proposed reservoir. The result would be that the plaintiffs would for many years continue to be deprived of their rights without any compensation except that which they might recover by a multiplicity of actions. It is obviously not doing equity to leave them in such a position. Under the circumstances of this case, equity demanded that the defendant be allowed a reasonable time within which to make adequate compensation to the plaintiffs for the permanent taking of their water rights if it intends to acquire them, and, if that compen-

sation is not made within such reasonable time, the defendant should be enjoined from further diversion of the waters of the stream. *Harding* v. *Stamford Water Co.*, 41 Conn. 87, 95. Although the granting or withholding of an injunction lies in the discretion of a trial court, when the only reasonable conclusion is that a plaintiff is, in equity, entitled to an injunction in a given form, it is competent for us to order such an injunction even though the trial court has refused it. *Hammerberg* v. *Leinert*, 132 Conn. 596, 604, 46 A. 2d 420. The trial court was in error in unconditionally denying the injunction against the diversion of the waters of the stream.

There is error in part, the judgment is set aside and the case is remanded with direction to hear the parties and determine what will be a reasonable time to be allowed to the defendant to acquire the water rights of the plaintiffs by condemnation or otherwise — that to be the sole issue of fact to be tried — and then to enter a judgment which shall (1) direct that unless compensation is made within that reasonable time the defendant shall be enjoined from further diversion of the waters of the stream as prayed, (2) deny the prayer for an injunction against condemning such water rights of the plaintiffs as will be taken for the construction of the proposed reservoir, and (3) deny the prayer of the cross complaint for a declaratory judgment.

In this opinion the other judges concurred.