## GREENWICH WATER COMPANY *v.* ELSIE B. ADAMS ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

536

Argued June 10—decided July 30, 1958

*John N. Cole,* for the appellants (defendants).

*William C. Strong* and *Frank J. Coyle,* for the appellee (plaintiff).

MURPHY, J. The defendants have appealed from an order entered by a judge of the Superior Court appointing a committee of three disinterested persons to ascertain and assess such damages as the defendants may sustain from the taking by condemnation of certain riparian rights by the plaintiff. Nineteen other actions involving similar issues have been combined with this appeal and will be governed by its disposition.

Most of the defendants in these combined appeals were parties plaintiff in *Adams* v. *Greenwich Water Co.*, 138 Conn. 205, 83 A.2d 177. In that action the plaintiffs therein sought unsuccessfully to enjoin the water company from taking by condemnation certain of their rights as riparian owners in and to the waters of the Mianus River. The named defendant in that action, the water company, filed a counterclaim in which it sought and obtained a declaratory judgment to the effect that it had the power to condemn lands and water rights, including those of the plaintiffs, along the Mianus River. Upon appeal, we held that the decision that the plaintiffs therein were not entitled to an injunction against such condemnation completely adjudicated the question of the water company's right to condemn as between the parties to that action. Id., 217. As to those plaintiffs, the declaratory judgment added nothing and was unnecessary, and since it included in its effect not only those plaintiffs but all other property owners along the river who were similarly situated, we held that it should not have been rendered because it affected the rights of persons who were not parties to the action.

While, on the record, it would seem that the right of the plaintiff in these actions to condemn is res judicata as to such defendants as were plaintiffs

in *Adams* v. *Greenwich Water Co.*, supra, and their privies (*Bridgeport Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 196, 91 A.2d 778), there are other defendants in the instant cases to whom such a claim would not be applicable. It is apparent from a comparison of the record in the *Adams* case, supra, with the one here and with the records in two cases tried together, *Greenwich* v. *Greenwich Water Co.* and *Mianus Valley Trails, Inc.* v. *Greenwich Water Co.*, decided this day, that virtually the same evidence has been presented to three different triers and that they have reached the same conclusion. We shall confine this opinion to the features of the case upon which we have not yet spoken and avoid, if possible, repetition of the facts and conclusions of law to be found in the other opinions.

Since the decision of this court in the *Adams* case, supra, the plaintiff, in conjunction with the Port Chester Water Works, Inc., hereinafter referred to as Port Chester, has constructed a dam in Stamford, just north of Farms Road, which impounds the waters of the Mianus River in a reservoir extending over the state line into New York. While the reservoir will flood more land in Connecticut than in New York, the greater part of the drainage area which will yield the water to fill the reservoir is in New York. The elevation and height of the dam are such that it will form a reservoir with a storage capacity of 2.2 billion gallons of water. If the area to be flooded were limited to Connecticut, it would provide storage for only 250 million gallons.

The defendants are owners of property in Stamford on the Mianus River below the reservoir. As such, they have the right to have the water flow through their lands in its accustomed manner. *Farrington* v. *Klauber,* 130 Conn. 170, 173, 32 A.2d

644. The plaintiff in these actions seeks to obtain by condemnation the right, subject to certain conditions, to divert 10 million gallons of water per day, averaged over each calendar year, from the Mianus reservoir into that part of its distribution system which supplies water to the major portion of Greenwich and to Port Chester. If this diversion is not permitted, the overflow from the reservoir will flow naturally through the river bed below the dam and the defendants will have the benefit of its use.

The Mianus River could well be described as temperamental. Its flow varies from a trickle to a torrent; from less than 1 million gallons to over 200 million gallons per day. That the plaintiff has the power to condemn the water rights of riparian owners on the Mianus River and that the determination of what is necessary to be taken rests in the discretion of the company are settled by *Adams* v. *Greenwich Water Co.,* 138 Conn. 205, 213, 83 A.2d 177. That case also held that where the taking was for a public use which will provide a substantial and direct benefit to the people of this state, it is a proper exercise of the right of eminent domain though residents of another state benefit thereby.

The finding, which is not subject to correction, shows that without the 2.2 billion gallon reservoir and the requested diversion, the facilities of the plaintiff will be insufficient to provide the amount of water required to fulfil the franchise which the legislature gave it. With the larger reservoir and the diversion, the safe yield of from 15.4 million gallons to 17.4 million gallons per day will be amply sufficient to meet the plaintiff's requirements for Greenwich and Port Chester until 1975. "Safe yield" means the maximum dependable amount of

water which can be drawn continuously from the sources of surface supply during a period of drought. The total requirements of both Greenwich and Port Chester in 1975 will be about 14 million gallons per day, 52 per cent of which will be needed for Greenwich and 48 per cent for Port Chester. The finding that the plaintiff's program of increasing its water supply by utilizing the 2.2 billion gallon bi-state reservoir and diverting the requested amount of water subject to the conditions set forth in its petition is the most feasible and economically desirable means of carrying out its charter obligations and the conclusion of the judge that the taking of the riparian rights of the defendants is necessary to serve a public use in this state are amply warranted. The defendants have failed to sustain the burden of showing bad faith or unreasonable conduct upon the part of the plaintiff. Such proof is necessary to warrant judicial interference with the condemnation. *Adams* v. *Greenwich Water Co.*, supra; *Stevens* v. *Connecticut Co.*, 86 Conn. 36, 41, 84 A. 361.

So far, we have made no direct reference to the contract between the plaintiff and Port Chester which is discussed in *Greenwich* v. *Greenwich Water Co.*, decided this day. The primary need for diversion stems from the provisions of that contract under which the plaintiff agrees to supply Port Chester's requirements for water up to a definite maximum. The defendants claim that the contract is ultra vires in that it attempts to allocate the waters of an interstate river for a period of seventy-five years, the duration of the contract. The Mianus River is an interstate stream which has its source in New York state. All of the river above the reservoir and most of the watershed is in that state. New York and its inhabitants have an equitable right to

the use of the water in the Mianus River, and because it thereafter flows through Connecticut, this state and its inhabitants enjoy a similar right. Neither state can utilize the waters of the river to the exclusion of the other. See *Connecticut* v. *Massachusetts,* 282 U.S. 660, 670, 51 S. Ct. 286, 75 L. Ed. 602; *New Jersey* v. *New York,* 283 U.S. 336, 342, 51 S. Ct. 478, 75 L. Ed. 1104. The contracting parties have not attempted to allocate the waters of the river for the life of the contract. They have simply provided for a fair distribution of such waters as may be impounded in the Mianus reservoir. Corporations may, within the fair intent and purpose of their creation, exercise all the powers which are reasonably proper to give effect to the powers expressly granted. In doing this, they must have a choice of means adapted to ends, and are not to be confined to any one mode of operation. *S.O. & C. Co.* v. *Ansonia Water Co.,* 83 Conn. 611, 633, 78 A. 432. The plaintiff is chartered to furnish water for public and private use not only to certain areas of Connecticut but also to territories in our neighboring state of New York, including the franchise area of Port Chester. The plaintiff has such implied powers as are necessary to carry its expressed powers into effect. *Community Credit Union, Inc.* v. *Connors,* 141 Conn. 301, 305, 105 A.2d 772. There is no merit in the defendants' contention that the plaintiff has exceeded its authorized powers or that the contract is ultra vires. The flooding of the necessary acreage in New York state to permit the 2.2 billion gallon reservoir has been approved by the appropriate authorities in that state.

Only one other claim of the defendants merits discussion. Prior to 1955, the plaintiff was authorized to supply water for use in Westchester County, New

York, "whenever such use shall not curtail the adequate supply for the necessities of the inhabitants of" Connecticut. 20 Spec. Laws 361. At the special session of the legislature in June, 1955, the plaintiff's charter was amended by substituting the word "abundant" for "adequate." 27 Spec. Laws 673. Webster's New International Dictionary (2d Ed.) defines "abundant" as "amply sufficient; plentiful," and "adequate" as "fully sufficient." A water company should provide for a supply of water to meet the conditions as they will be at least ten and preferably fifteen or twenty years in the future. *Adams* v. *Greenwich Water Co.*, 138 Conn. 205, 212, 83 A.2d 177. The defendants have failed to show that the supply of water for the inhabitants of this state from the plaintiff's resources for the reasonably foreseeable future will not be amply sufficient after the plaintiff has fulfilled its contractual obligation to supply Port Chester's requirements.

There is no error.

In this opinion the other judges concurred.